NETTIE A. GREEN *vs.* FRANK W. ALLEN ET ALS.

Penobscot.     Opinion, January 10, 1934.

*Fellows & Fellows,* for plaintiff.
*Butler & Butler,* for defendants.

SITTING: PATTANGALL, C. J., STURGIS, BARNES, THAXTER, HUDSON, JJ.

PATTANGALL, C. J.    Bill in Equity involving the construction of a single paragraph in a will in which defendant Allen is named executor. On appeal.

The paragraph in question reads:

"All my wearing apparel, jewelry, articles of adornment and personal effects, I give and bequeath to my wife, Nettie Shaw, my sister, Mrs. Mary S. Kimball, my niece Mrs. Fred B. Bradeen and Frank W. Allen, to be distributed by them in accordance with their wishes and desires. Inasmuch as Frank W. Allen is familiar with my wishes to a considerable extent, his suggestions may be helpful in the distribution."

Plaintiff claimed that the persons named became owners, as tenants in common, of the personal property described and prayed that it be divided equally on the basis of value between them; and if division in kind proved impracticable, to be sold and the proceeds divided.

The Court below dismissed the bill, finding that the testator intended to create other than a charitable trust but that the trust was too indefinite on its face to be carried into effect; that the legatees named took the legal title to the property but not the beneficial interest therein; and that the residuary legatees, by way of a resulting trust, acquired the beneficial interest. As authority for his finding, the learned Justice relied on *Fitzsimmons* v. *Harmon*, 108 Me., 456, 81 A., 667; *Haskell* v. *Staples*, 116 Me., 103, 100 A., 148; *Buzzell et als* v. *Fogg*, 120 Me., 158, 113 A., 50; *Nichols* v. *Allen*, 130 Mass., 211.

Attention was called by him to another item in the will which he regarded as of evidential value on the question of the testator's intent. This item read:

"Inasmuch as my wife, Nettie A. Shaw and myself, and before our marriage, made and executed an ante-nuptial agreement under date of November 12, 1926, said ante-nuptial agreement is now confirmed by me, and because of it I make no bequest to my said wife in this Will."

The record discloses that testator left an estate appraised at $325,000, no part of which, because of the ante-nuptial agreement referred to in his will, went to his widow; that the property which appeared to be included in the paragraph in dispute was estimated to be of the value of $1,861.50 exclusive of the testator's clothing which was, by agreement of all of the interested parties, presented to a charitable institution. Included in the list were two diamond rings, one valued at $525 and one at $540. The remaining articles, valued at about $800, were divided among the four people named in a manner satisfactory to all, without much, if any, regard to value.

The items awarded to testator's widow were estimated to be worth $327.25; those to his sister $192.75; to his niece $156.76; to his friend and executor, Mr. Allen, $139.75. When the rings were reached, an irreconcilable disagreement at once appeared. The widow insisted upon receiving one of them. The sister and niece urged that they should remain in testator's family, one of them having been originally a gift from testator to a former wife. The executor temporarily retained possession of the rings but declined to take part in deciding to whom they should be allocated. The three women attempted to settle the matter by vote, the sister and niece uniting in favor of giving one of them to the daughter of Mrs. Kimball, the other to the son of Mrs. Bradeen. Mrs. Shaw refused to agree to the arrangement and thus a dispute arose which finally culminated in this litigation. Meantime, the executor delivered the rings as directed by majority vote of the others, deeming this sufficient authority for so doing.

The controlling rule to be applied in construing the meaning and force of the provisions of a will is that the intention of the testator as expressed must govern, unless it is inconsistent with legal rules. Such intention may be determined by an examination of the whole instrument, including its general scope, logical implications and necessary inferences. Language may be changed or moulded to give effect to intent, *Hopkins* v. *Keazer*, 89 Me., 345, 36 A., 615, and intent will not be allowed to fail for want of apt phrase or conventional formula, *Fuller* v. *Fuller*, 84 Me., 475, 24 A., 946.

We can not agree with plaintiff that it was the intent of the testator in the instant case that the property in dispute should be divided into four parts of equal value among those named in the

bequest. The money value of the bequest was relatively trivial. The apparent intent of this portion of the will was to leave to those who were nearest to the testator certain tokens of his regard, the mere sight of which would revive kindly memories of old companionship. The value of these mementos was not to be measured in money. It sounded in sentiment, not in dollars. On such a basis, the testator believed that the distribution of his personal effects would be approached.

Nor do we subscribe to the doctrine that the legatees took title to the property as tenants in common. The language of the will contradicts that theory. The phrase "to be distributed by them" is not synonymous with "to be distributed among them" or "divided among them." The use of either of the latter phrases would imply the exclusion, as participants in the gift, of all excepting those named. The words actually used are inclusive of the persons particularly designated and also of an unascertainable number of others. The bequest is not restricted to those whom plaintiff regards as cotenants. Not being so restricted, the legatees took as trustees merely the naked legal title. A trust, then, having been created, too indefinite on its face to be carried out, the beneficial interest in the property by way of a resulting trust passes to the residuary legatees in accordance with the rule laid down in *Buzzell* v. *Fogg*, supra, and cases cited therein.

*Appeal dismissed.*
*Decree below affirmed.*