# United States Court of Appeals

## For the First Circuit

No. 03-2060

AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY,
Plaintiff, Appellant,

v.

TIMOTHY S. KEITER, P.A.; K.W. ENTERPRISES, INC., f/k/a
RENT-A-HUSBAND, INC.; KAILE R. WARREN, JR.; TIMOTHY S. KEITER,
Defendants, Appellees,

ERIKA L. KENNEDY, f/k/a ERIKA KENNEDY FRANK,
Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
[Hon. Gene Carter, Senior U.S. District Judge]

Before
Boudin, Chief Judge,
Lourie, Circuit Judge,[*]
and Lynch, Circuit Judge.

Scott F. Bertschi, with whom Matthew T. Covell and Arnall
Golden Gregory LLP were on brief, for appellant.

Roy T. Pierce, with whom Jonathan S. Piper and Preti,
Flaherty, Beliveau, Pachios & Haley, LLC were on brief, for
appellees.

February 26, 2004

[*]Of the Federal Circuit, sitting by designation.

**LYNCH**, **Circuit Judge**.  A legal malpractice insurer sought a declaratory judgment in federal district court that, pursuant to a "business enterprise" exclusion in a lawyer's professional liability insurance policy, it has neither a duty to defend nor a duty to indemnify the insured lawyer, Timothy Keiter, in an underlying state court suit alleging legal malpractice and breach of fiduciary duty.  The district court denied the insurer's summary judgment motion.  It found a duty to defend under Maine law and held that consideration of the duty to indemnify was premature.  The insurer appealed on the duty to defend issue.

We affirm the finding of a duty to defend.

## I.

American Guarantee & Liability Insurance Company ("American Guarantee") issued to Timothy S. Keiter, P.A. a professional liability insurance policy (the "Policy") that was in effect at all material times.

In June 1996, Keiter was retained as a lawyer by Kaile R. Warren, Jr. to represent him in connection with the development of his handyman business franchise concept.  Keiter incorporated MelBren Construction, Inc. ("MelBren") for Warren in 1996 and, in exchange, was issued fifty shares (representing twenty-five percent) of its common stock.  Warren was the president of MelBren, which did business under the assumed name of Rent-A-Husband.  In 1997, Keiter incorporated Rent-A-Husband, Inc. ("RAH") for Warren

-2-

for the purpose of promoting and selling Rent-A-Husband franchises. Warren was also the president of RAH. Twenty-five percent of RAH's shares were issued to Margaret Keiter, Timothy Keiter's wife at that time. Keiter himself did not then receive any RAH stock. In 1998, Warren sought and was offered a contract to author a "how-to" book, and Keiter represented Warren in negotiating the contract. On Keiter's advice, the book contract was structured in such a way that all book royalties would go to RAH and none would be paid directly to Warren.

In June 1999, Keiter filed for bankruptcy; on June 16, 2001, he obtained a bankruptcy discharge. On July 21, 1999, a divorce judgment ended the Keiters's marriage. The shares of MelBren and RAH were deemed marital property and were divided, as a consequence of the divorce decree, equally between Timothy and Margaret such that each came to hold a 12.5% interest in MelBren and a 12.5% interest in RAH as of July 21, 1999. In the fall of 2000, MelBren merged into RAH, and immediately thereafter, RAH was renamed K.W. Enterprises, Inc. ("KWE").

On June 22, 2001, KWE and Warren, who are appellees in this appeal, sued Keiter in Maine Superior Court. The suit (the "underlying action") involves five counts of legal malpractice against Keiter based on his alleged negligence in representing MelBren and RAH. More specifically, the complaint alleges that Keiter was professionally negligent in preparing certain franchise

documents, prosecuting the RAH trademark application, negotiating the sale of a franchise, drafting the closing documents for the sale of a franchise, and drafting the documents for the purchase of a trademark.

The suit also includes a sixth count -- a claim by Warren against Keiter for breach of fiduciary duty in connection with Keiter's 1998 representation of Warren in negotiating the book contract.  The relevant paragraphs of Count VI state:

> 81.  At the time Mr. Keiter negotiated the book contract on behalf of Mr. Warren, Mr. Keiter represented both Mr. Warren and RAH and was directly and closely related to a substantial stockholder in RAH, Mrs. Keiter.

> 83.  By advising Mr. Warren to negotiate a contract in which the proceeds of the book were made payable entirely to RAH, Mr. Keiter placed himself in a position to unfairly and improperly gain in the transaction through his wife, Mrs. Keiter's interest in RAH.  Through this transaction, Mr. Keiter took affirmative steps to obtain financial gain at the expense of his client.

In the amended complaint, the last line of what was ¶ 81 was altered to read "related to the purported owner of a substantial number of RAH's shares, Mrs. Keiter" and the end of the first sentence of what was ¶ 83 was altered to read "through Mrs. Keiter's purported interest in RAH."  In short, Counts I-V concerned MelBren, in which Keiter had an express ownership interest, as well as RAH.  But Count VI concerned only RAH, in which Keiter's wife had an express ownership interest but Keiter did not.

-4-

When sued, Keiter tendered the complaint to American Guarantee and filed a claim for coverage. American Guarantee initially disclaimed any duty to defend or indemnify on the ground that the allegations of the complaint were within the scope of the Policy's business enterprise exclusion.

Keiter had gone into bankruptcy and had received a bankruptcy discharge. It appears KWE and Warren believed that the Policy was the only source of recovery because they amended the complaint in an effort to avoid triggering the Policy's business enterprise exclusion. The amended complaint included two new paragraphs alleging that the MelBren and RAH stock issued to the Keiters provided them with no pecuniary or beneficial interest in either corporation because Maine law, Me. Rev. Stat. Ann. tit. 13-A, § 507(3)(B), KWE and Warren say, prohibits the issuance of shares in exchange for an agreement to perform future services and deems any such shares void.

In response to the amended complaint, American Guarantee agreed to provide Keiter with a defense subject to a reservation of rights and initiated an action seeking declaratory judgment that it has neither a duty to defend nor a duty to indemnify Keiter in the underlying action. American Guarantee argued that the claims in the Underlying Action fall within the scope of Section C(I)(h) of the Policy, which provides that coverage does not apply to:

> any claim based upon or arising out of the work performed by the Insured, with or without compensation, with

-5-

respect to any corporation, fund, trust, association, partnership, limited partnership, business enterprise or other venture, be it charitable or otherwise, of any kind or nature in which any Insured has any pecuniary or beneficial interest, irrespective of whether or not an attorney-client relationship exists, unless such entity is named in the Declarations.  For purposes of this policy, ownership or shares in a corporation shall not be considered a "pecuniary or beneficial interest" unless one Named Insured or members of the immediate family of the Named Insured own(s) 10% of the issued and outstanding shares of such corporation.

The argument was that Keiter's ownership interest in MelBren brought Counts I-V within the exclusion; his interest in his wife's ownership of RAH brought Count VI within the exclusion.  To avoid a duty to defend, all counts had to be within the exclusion.

The magistrate judge recommended that American Guarantee's motion for summary judgment be denied.  As to Count VI, the magistrate judge held that the allegations could reasonably be read as raising claims beyond those "based upon or arising out of" work performed by Keiter "with respect to" RAH, because the allegations suggested that Keiter may have undertaken the negotiation of the book contract for Warren as an individual rather than for the corporations.  As to Counts I-V, the magistrate judge held that the allegations of the complaint alone, considered without extrinsic facts, made it possible that the Policy exclusion did not apply to the claims and that the coverage issue thus could not be decided at the summary judgment stage.  The district court affirmed without opinion.

**II.**

We review the denial of summary judgment de novo. <u>Mt. Airy Ins. Co.</u> v. <u>Greenbaum</u>, 127 F.3d 15, 19 (1st Cir. 1997).

It is helpful to understand the rationale behind the business enterprise exclusion, a standard exclusion in lawyers' professional liability insurance policies. Professional liability insurers generally do not wish to provide coverage for the business activities of insured lawyers. R. Mallen & J. Smith, <u>Legal Malpractice</u> § 34.27 (5th ed. 2000). The actuarial rates on which lawyers' professional liability insurance rates are based contemplate that when insured lawyers exercise their professional judgment (1) they will be acting in their capacity as lawyers and (2) their judgment will not be clouded by personal interests. Accordingly, several types of business activities raise concerns for insurers and lead them to include policy provisions that exclude those activities from coverage. First, there are the business aspects of the practice of law -- such as renting office space in which to practice or dissolving a partnership formed for the purpose of practicing -- and the losses associated with those aspects of practice. <u>See</u> <u>id.</u> Second, there are activities undertaken by lawyers that blur the line between the practice of law and the practice of business, such as serving as an officer or director of a corporation. And third, there are business pursuits by lawyers that create conflicts between lawyers' personal

-7-

interests and the best interests of their clients, such as acquiring part ownership of a client's business.  See id.

Some courts have explained that standard business enterprise exclusions have two purposes:

> 1) 'to prevent collusive suits whereby malpractice coverage could be used to shift a lawyer's business loss onto the malpractice carrier' and 2) to avoid the circumstance where an insured so intermingles his business relationships with his law practice that an insurance carrier incurs additional risk of having to cover the insured for legal malpractice claims relating to the conduct of business, rather than solely out of the professional practice.

Jeffer v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 703 A.2d 316, 322 (N.J. Super. 1997) (quoting Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts and Youngs, P.C., 821 F.2d 216, 221 (3d Cir. 1987)).

Under Maine law, insurers bear the burden of proving the applicability of policy exclusions, and any ambiguity as to the meaning of the policy language is construed against the insurer. See Home Ins. Co. v. St. Paul Fire & Marine Ins. Co., 229 F.3d 56, 65 (1st Cir. 2000) ("Maine law favors an expansive view of an insurer's duty to defend; any ambiguity in policy language is to be construed in favor of the insured."). Careful attention is paid to the actual language of the exclusion, which we repeat:

> any claim based upon or arising out of the work performed by the Insured, with or without compensation, with respect to any corporation, fund, trust, association, partnership, limited partnership, business enterprise or other venture, be it charitable or otherwise, of any kind or nature in which any Insured has any pecuniary or

beneficial interest, irrespective of whether or not an attorney-client relationship exists, unless such entity is named in the Declarations. For purposes of this policy, ownership or shares in a corporation shall not be considered a "pecuniary or beneficial interest" unless one Named Insured or members of the immediate family of the Named Insured own(s) 10% of the issued and outstanding shares of such corporation.

Count VI of the complaint concerns RAH, shares of which were owned by Keiter's wife but not by Keiter himself. We assume arguendo that Count VI was "based upon or arising out of the work performed by the Insured . . . with respect to" RAH.

The first sentence of the exclusion, literally read, explains that the exclusion only applies if Keiter, the "Insured," has a "pecuniary or beneficial interest" in RAH. Under normal usage of the term, Keiter has no pecuniary interest in RAH because he is not a direct owner. Under normal usage, though, he might have a beneficial interest in RAH by virtue of his wife's ownership of RAH stock. For example, it appears that in some community property states one spouse has a beneficial interest arising from the other spouse's ownership of stock.[1] Of course, the Policy

_____

[1] In Washington, a community property state, one spouse is deemed to have a beneficial interest in stock owned by the other spouse by virtue of the one-half community property interest. See LaHue v. Keystone Investment Co., 496 P.2d 343, 350 (Wash. Ct. App. 1972) (widow has standing to bring a stockholder's derivative action by virtue of her one-half community interest in her husband's stock, which grants her a one-half vested beneficial interest in shares held in his name, and her standing is not contingent on her husband's death because she is not merely a legatee, but rather, is an owner of the one-half community interest).

itself may define "pecuniary or beneficial interest."  But the Definitions section of the Policy does not provide a definition of the terms.

One reading of the second sentence is that it implicitly defines a Named Insured's "pecuniary or beneficial interest" as encompassing a situation in which either the "Named Insured or members of the immediate family of the Named Insured own[] 10% of the issued and outstanding shares of such corporation."  This reading makes sense from the insurer's point of view as establishing a flat and easily administered rule, benefitting it. But there are problems with this reading.  It is not a literal reading.  The second sentence is written in the negative, not as a positive definition.  If the sentence is meant to be definitional, defining 10% ownership by a family member as a pecuniary or beneficial interest of the Named Insured, then it is oddly written. The sentence starts with "For purposes of this policy, ownership or shares in a corporation shall not be considered a . . . beneficial interest' unless . . ."  (emphasis added).  The sentence could easily have been written to say "For purposes of this policy, ownership of 10% or more of the issued and outstanding shares in such a corporation by the Named Insured or by members of the immediate family of the Named Insured shall constitute a pecuniary or beneficial interest in such corporation on the part of the Named Insured."  It also departs from the normal usage of the terms

"pecuniary" and "beneficial" in describing property rights. And it is at some tension with a literal reading of the first sentence.

There is an alternate reading of the second sentence -- as a carve out, not as a definition. Under this reading, the insurer must first establish that a Named Insured who does not have a pecuniary interest does have a "beneficial interest" in a corporation (under the first sentence). Then, if that beneficial interest on the part of the Named Insured arises from ownership of that corporation's stock by members of the Named Insured's immediate family (under the second sentence), that beneficial interest does not bring the Named Insured within the business exclusion unless the ownership by the family member amounts to 10% of the corporation's stock. Under this reading, the language of the exclusion does not purport to define the circumstances in which a Named Insured is deemed to have a "pecuniary or beneficial interest" in a corporation by virtue of stock ownership by a member of the Named Insured's immediate family; instead, the exclusion merely carves out of the business exclusion ownership of stock of less than 10%. This reading makes sense only if there are situations in which a person may be deemed to have a "pecuniary or beneficial interest," as that term is defined elsewhere, in a family member's ownership of stock. Such situations clearly do exist: under the law of some states, spouses do sometimes have beneficial interests arising from the other spouse's stock

ownership. This is the most literal reading of the two sentences. It also has the benefit of looking to state law definitions of property rights in the absence of an express definition of the term "pecuniary or beneficial interest" in the Policy.

None of this would matter if the relevant state law gave Keiter a "pecuniary or beneficial interest" in RAH by virtue of his wife's shares. The Policy does not specify the law of any particular state as governing. Here, the parties agree that Maine law applies to the Policy. Under Maine law, there are some instances in which one spouse has a beneficial interest arising from the other spouse's ownership of shares. If one of those instances were alleged here, then Keiter's wife's ownership of RAH stock would not bring Keiter within the latter reading of the exclusion unless she owned, as she did, at least 10% of the shares (by operation of the second sentence of the policy as a limitation on the first sentence). But under Maine law, Keiter had no beneficial interest arising from his wife's ownership of shares at the relevant time, or at least none that could be determined from the face of the complaint in the underlying action. Under the second reading, Keiter was not within the business exclusion as to RAH by operation of the first sentence; the second sentence is never even reached. This reading may not be so beneficial to the insurer, but then it is the insurer that wrote the language.

We explain briefly why Maine law does not grant Keiter a beneficial interest.  The concept of a "beneficial interest" appears most often in the context of trusts and estates law.  See, e.g., Estate of Fisher, 545 A.2d 1266, 1272 (Me. 1988) (discussing a surviving spouse's beneficial interest in a testamentary trust); Green v. Allen, 170 A. 504, 506 (Me. 1934) (discussing the beneficial interest passing by way of a resulting trust); see also Black's Law Dictionary 149 (7th ed. 1999) (defining "beneficial interest" as "[a] right or expectancy in something (such as a trust or an estate), as opposed to legal title to that thing").  Nothing on the face of the complaint alleges that Keiter was a beneficiary under his wife's will or under a trust she executed for his benefit.  And under Maine law, it is the face of the complaint that is examined in determining whether an insurer has a duty to defend. See Auto Europe, LLC v. Conn. Indem. Co., 321 F.3d 60, 66 (1st Cir. 2003) (applying Maine law); York Ins. Group of Me. v. Lambert, 740 A.2d 984, 985 (Me. 1999); American Employers' Ins. Co. v. DeLorme Pub. Co., Inc., 39 F.Supp. 2d 64, 73 (D. Me. 1999).

The insurer argues that a beneficial interest on the part of Keiter arises by virtue of the marriage itself.  In Maine, marital property is subject to equitable distribution upon divorce. Me. Rev. Stat. Ann. tit. 19-A, § 953 (1998); see Warner v. Warner, 807 A.2d 607, 616, 621 n.16 (Me. 2002).  Once a divorce petition is filed, each spouse is deemed to have a beneficial interest in

-13-

marital property to which the other spouse holds legal title. <u>Davis</u> v. <u>Cox</u>, 2004 WL 110848, at *13 (1st Cir. Jan. 15, 2004) (interpreting Maine law).  But as this court recently held under Maine law, "<u>a non-owner spouse does not, absent a divorce situation, acquire by virtue of the marital relationship alone an interest, beneficial or otherwise, in the owner-spouse's property</u>." <u>Id.</u> at *8 (emphasis added); <u>see</u> <u>Long</u> v. <u>Long</u>, 697 A.2d 1317, 1321 (Me. 1997) ("[t]he 'marital property' designation grants no present rights [to the non-owner spouse] in the property during the marriage"); <u>Szelenyi</u> v. <u>Miller</u>, 564 A.2d 768, 770 (Me. 1989).  That rule resolves this case.  On the face of the complaint in the underlying action, there is no indication that Timothy and Margaret Keiter were in a divorce situation at the time of the alleged fiduciary breach.  As a result, Timothy Keiter has no beneficial interest in RAH and is not within the exclusion under the second reading.

The question of whether there is ambiguity is close, but the insurer bears the burden of proving the exclusion and the tradition of construing language against insurers, especially language of exclusions from coverage, is very strong.  This is particularly so under Maine law.  <u>Golden Rule Ins. Co.</u> v. <u>Atallah</u>, 45 F.3d 512, 516 (1st Cir. 1995) ("Because exclusions from coverage in insurance contracts are not favored [under Maine law] and must be stated clearly and unambiguously, ambiguities in such contracts

-14-

must be resolved against the insurer."); <u>Gross</u> v. <u>Green Mtn. Ins. Co.</u>, 506 A.2d 1139, 1141 (Me. 1986) ("Standard insurance policies, having been drafted by the insurers, will be construed most strongly against them."); Mallen & Smith at § 34.23. Construing the two sentences of the business exclusion against the insurer, we conclude that there was a duty to defend.

We need not reach the arguments made as to the remaining counts of the complaint because "under Maine law, if an insurer has a duty to defend against one count of a complaint, it has a derivative duty to defend against other counts if they are sufficiently related that apportioning defense costs as between [them] is not practicable." <u>Home Ins. Co.</u>, 229 F.3d at 65; <u>see</u> <u>Gibson</u> v. <u>Farm Family Mut. Ins. Co.</u>, 673 A.2d 1350, 1353-54 (Me. 1996).

**III.**

The district court's order denying summary judgment is **<u>affirmed</u>**. Costs are awarded to defendants. So ordered.

**Dissenting opinion follows.**

-15-

**LOURIE, Circuit Judge (dissenting).** I respectfully dissent from the majority's conclusion that the business enterprise exclusion does not apply to Count VI. That provision defines a pecuniary or beneficial interest as existing if an insured or anyone in his immediate family owns at least 10% of the outstanding stock of that business. The second sentence of that provision states that "ownership or shares in a corporation shall not be considered a 'pecuniary or beneficial interest' <u>unless</u> one Named Insured or members of the immediate family . . . own(s) 10% of the . . . shares of [the] corporation." (Emphasis added.) Contrary to the views of the majority, I believe that the "unless" language makes all the difference in the meaning of that provision. It means that if there <u>is</u> a pecuniary interest on the part of his then-wife greater than 10%, then the insured (Keiter) is considered to have a pecuniary interest. There is no ambiguity in that language.

In my view, the reference to a member of the immediate family clearly applies to Keiter's then-wife. The fact that it is framed in the negative does not make it ambiguous or mask its clear meaning, <u>viz.</u>, that ownership of 10% of stock in the corporation by Keiter's wife <u>is</u> a "pecuniary or beneficial interest" in Keiter. Accordingly, I consider the beneficial interest analysis under Maine law to be irrelevant. It is a pecuniary interest that the then-wife possessed, not a mere beneficial interest. And it is not

-16-

a beneficial interest in Keiter that matters, but the pecuniary interest possessed by the "member[s] of the immediate family."

I recognize that the policy of Maine favors an insurer's duty to defend. However, I cannot see that that policy overcomes language that the parties to an insurance contract agreed to that negates such coverage.

Whether the exclusion also applies to Counts I-V involves analyses that the majority did not need to get to, but, under my analysis of Count VI, needs to be decided. I make no comment on the merits of those issues, except to state that, in my view, they need to be addressed in order to determine whether American Guarantee had a duty to defend.