**In re Katrina REMINGTON, Debtor.**

No. 03–21716.

United States Bankruptcy Court, D. Maine.

July 12, 2004.

**316**

Stanley F. Greenberg, Portland, ME, for Evergreen Federal Credit Union.

Marcus G. Beebe, Jr., Portland, ME, for Debtor.

## MEMORANDUM OF DECISION

JAMES B. HAINES, JR., Bankruptcy Judge.

Before me on stipulated facts is Katrina Remington's motion to avoid a judicial lien held by Evergreen Federal Credit Union. She contends the lien impairs her residence exemption. Because Evergreen's lien became fixed to the real estate before Katrina obtained her interest in it, I conclude that she cannot successfully wield § 522(f)'s lien avoidance powers.[1]

### Introduction

Katrina's motion raises issues involving the interplay of Maine marital property law, Maine debtor/creditor law, and the Bankruptcy Code. In a different context, those issues were recently addressed by this court and by the First Circuit in *Davis v. Cox (In re Cox)*, 274 B.R. 13 (Bankr.D.Me.2002)(*Cox I*), *aff'd in part, rev'd in part*, 356 F.3d 76 (1st Cir. 2004)(*Cox II*). The *Cox II* holding is so limited that it provides no rule of decision here. We need not, however, wander the woods. The stipulated facts provide a beginning. From there, settled principles of § 522(f) lien avoidance determine the matter.

### Facts

Evergreen obtained a two-count judgment against Katrina and her then-husband, Daniel, in the Maine District Court on December 31, 2001. Katrina was a

---

1.  Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Re-    form Act of 1978, as amended, "Code" or "Bankruptcy Code," 11 U.S.C. § 101, *et seq.*

party to count one and Daniel was party to both counts. Evergreen took the necessary steps to obtain and perfect a judicial lien against the Remingtons' residence, effective February 7, 2002. On that date Daniel was the property's sole legal owner. At that time, too, the Remingtons were seeking divorce through a separate state court action.[2] Pursuant to a divorce decree issued in August 2002, Daniel conveyed the residence to Katrina by warranty deed, recorded in September 2003.

Katrina filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on October 21, 2003. On that date the residence was worth less than the sum of the unavoidable liens (two mortgage notes and a tax lien) against it. Katrina timely claimed a $50,000 exemption in the residence pursuant to 14 M.R.S.A. § 4422(1). Her entitlement to that exemption is not in contest. As of the petition date, Evergreen's judgment lien claim was $21,107.39 ($6,568.85 on count one and $14,538.54 on count two).

## Discussion

■ The Bankruptcy Code provides honest, needy debtors with a "fresh start." *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Educational Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1308 (10th Cir.2004). The ability to avoid judicial liens that impair exempt property is a central feature of that fresh start. *Garran v. SMS Fin., LLC (In re Garran)*, 338 F.3d 1, 5 (1st Cir.2003) (recognizing that, but for § 522(f), judicial liens would not routinely be discharged in bankruptcy and thus may interfere with a debtor's "fresh start"). In

pertinent part, Code § 522(f) establishes a debtor's lien avoidance power:

(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien .... [3]

11 U.S.C. § 522(f)(1). The notions of "impairment" and "avoidance" are now clearly defined by statute and, in this circuit, authoritative case law. *Nelson v. Scala*, 192 F.3d 32 (1st Cir.1999) (addressing amended statute's avoidance formula).

■ If Evergreen's judicial lien "fixed" on Katrina's interest in the residence, she would be entitled to avoid it fully under the statute's formula. But there's the rub. "[U]nless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1)." *Farrey v. Sanderfoot*, 500 U.S. 291, 296, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). The question is whether, when the lien became affixed to the residence, did it attach to an interest Katrina then held in the property? Or, put differently, did she take the property "subject to" Evergreen's lien? The answer is one of state law. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (bankruptcy law operates on rights and interests as defined by state

---

**2.** This point is not the subject of an express stipulation, but is fundamental to Katrina's argument. Evergreen takes no issue with it, but argues against its significance.

**3.** Section 522(f)(1)(A) goes on to exclude certain liens securing divorce-related obligations

from its operation. The exclusion does not apply in this case. The section's reference to subsection (b) of § 522 refers to the set of exemptions (state or federal) to which a debtor is entitled under options provided by federal and state law. *See* § 522(b)(1).

law, unless federal interests require a different result).

■ Given that Evergreen recorded its lien long before Katrina obtained title, the answer—that she took the property subject to Evergreen's lien (and therefore cannot avoid the lien)—would seem straightforward. The question is complicated only by the pendency of Katrina's divorce from the record owner (and, one assumes, her claim to marital property rights in the residence) on the lien's record date. Even so, the answer would be clear but for the First Circuit's *Cox II* decision and at least one subsequent reading of that case.[4]

In *Cox I* the question before me was whether the content of a debtor's bankruptcy estate was subject to diminution when, with a divorce pending at filing, a domestic relations court made a post-bankruptcy property division, allocating assets titled solely in the debtor to the non-debtor former spouse in recognition of his or her marital property rights. *Cox I*, 274 B.R. at 19. Consistent with *Butner*, I assayed the content of the bankruptcy estate under § 541, taking into account the debtor's state law property rights. *Id.* I concluded that the filing of a divorce petition, without more, did not vest the non-owner, non-debtor spouse with specific rights in assets held in the debtor's name. *Id.* at 28–30. Accordingly, I held that the debtor's bankruptcy estate included all the debtor's interests in assets titled in his name, undiminished by contingent, undeclared marital property rights of the non-debtor spouse. *Id.*

After the district court affirmed, the case proceeded to the First Circuit. There, the court's majority reversed that portion of my holding that determined that the contested asset (an individual retirement account) became part of the bankruptcy estate and that the non-debtor spouse's marital property claims constituted garden variety claims against the estate. It did so on limited grounds. With longiloquence, the court discussed sundry theories of marital property rights. *Cox II*, 356 F.3d at 83–85. But, in the end, citing the debtor's economic misconduct, it held that the retirement account was not part of the bankruptcy estate:

> We think that a Maine court would hold, in these facts and circumstances, that at the time of bankruptcy, Cox held the ... IRA upon a constructive trust for [his spouse], with the precise scope of her beneficial interest to be ultimately determined by the divorce court. We believe that the existence of this equitable interest sufficed under section 541(d) of the Bankruptcy Code to remove the ... IRA from Cox's bankruptcy estate, subject to final disposition by the Maine divorce court.

*Cox II*, 356 F.3d at 89. In addition to expressly limiting its decision to the facts before it, the appeals court noted that it was addressing an exempt asset, where only the debtor would benefit by a contrary holding. And it remarked that the case before it did not involve "creditor interests other than such as may be said to exist between the divorcing couple themselves." *Id.* Significantly, the *Cox II* majority did not hold that the filing of a divorce complaint, by itself, "creates a legal or equitable property interest in a marital asset held exclusively in the name of one spouse." *Id.* at 94 (Cyr, J., dissenting) (noting that the majority apparently accepted my exposition of pertinent Maine law principles).[5]

---

4. *See infra* note 5.

5. Indeed, the *Cox II* majority expressly forewent any "broad pronouncement" regarding

The parties agree that the tug-of-war between Katrina and Evergreen is analogous to the contest between Cox's spouse and his bankruptcy estate. The question here is whether Katrina had an interest in the residence when Evergreen's lien became affixed to it. (In the *Cox* case it was whether the non-debtor spouse had an interest in the IRA when the bankruptcy petition was filed.) Yet Katrina offers no evidence of misconduct that might support a claim that by the time Evergreen liened the residence, Daniel held the property in trust for her pending the divorce court's final property division decree. Moreover, here we have a situation about which the First Circuit expressly, and for good reason, withheld judgment: where the non-owner spouse's claimed interests are arrayed against a third-party creditor.[6]

Finally, *Cox II* held that the non-debtor/non-owner spouse was without a legal remedy to protect her prospective marital property division interest in personal property pending the final divorce decree. Here, we are dealing with real estate, and as to real estate, the Maine Legislature has addressed the situation and has fashioned a remedy that may be employed unilaterally by the non-owner, divorcing spouse. *See* 19-A M.R.S.A. § 953(6) (spouse claiming marital interest in real estate held in other spouse's name may record the divorce complaint, a clerk's certificate, or other qualifying documents in the registry of deeds to protect her interest; until then, title to property is unaffected).[7]

When Evergreen's lien fixed on the property, Daniel owned it exclusively. Both counts of Evergreen's judgment fixed liability upon him. Katrina held no present interest in the property and came to hold no such interest until long after Evergreen's lien was of record.[8] The bare pendency of divorce at the time the lien was obtained did not provide Katrina with an interest in the property on February 7, 2002. Because Katrina did not hold an interest in the property before the lien fixed upon it, she cannot avoid the lien. She took the property "subject to" the lien and cannot now avoid it using § 522(f). *Farrey v. Sanderfoot*, 500 U.S. at 301, 111 S.Ct. 1825 ("We hold that § 522(f)(1) of the Bankruptcy Code requires a debtor to have possessed an interest to which a lien

Maine domestic relations law, recognizing that it could produce "unforeseen effects on Maine creditors' rights law in factual circumstances quite different from the present." *Cox II*, 356 F.3d at 91 n. 11.

Notwithstanding *Cox II's* limited holding, within a week of the decision, another panel of the First Circuit cited *Cox II* for the proposition that under Maine law, "[o]nce a divorce petition is filed, each spouse is deemed to have a beneficial interest in marital property to which the other spouse holds legal title." *American Guarantee & Liab. Ins. Co. v. Keiter*, 360 F.3d 13, 19 (1st Cir.2004). *Keiter* is neither a bankruptcy case nor a creditors' rights case. Rather, it addresses an insurer's duty to defend certain claims under an attorney's professional liability policy in light of a "business enterprise" exclusion. It bears not at all on the case before me.

6. As I observed in *Cox I*, "[f]ew would opt for a legal environment where, once a divorce complaint is filed, those who deal with either spouse would, without notice, risk that their expectations would be upset by a subsequent equitable distribution order." *Cox I*, 274 B.R. at 36.

7. This statutory remedy distinguishes the case before me from *Cox* in ways both fundamental and significant. Perhaps most importantly, its existence belies any contention that today's holding constitutes the kind of "broad pronouncement" the *Cox II* majority considered should be made, if at all, by a Maine court. *See* note 5 *supra*.

8. Conceivably, the 2002 divorce decree gave Katrina rights in the real estate, but it is not in the record. Even if it did, it came too late.

attached, before it attached, to avoid the fixing of the lien on that interest.").

### Conclusion

For the foregoing reasons, Katrina Remington's motion seeking to avoid Evergreen Federal Credit Union's judicial lien on her residence is denied. A separate order shall issue forthwith.