**Herbert H. HAASE, Debtor.**

**Pawtucket Credit Union, and Town and Country Federal Credit Union, Appellants,**

v.

**Herbert H. Haase, Appellee.**

**BAP No. EP 03–046.**

**Bankruptcy No. 01–21309–JBH.**

United States Bankruptcy Appellate Panel for the First Circuit.

March 15, 2004.

Stanley Greenberg, Portland, ME, on brief for the Appellants.

William H. Sandstead, Portland, ME, on brief for the Appellee.

Before LAMOUTTE, de JESÚS and HILLMAN, United States Bankruptcy Appellate Panel Judges.

HILLMAN, Bankruptcy Judge.

## I. INTRODUCTION

Prior to these bankruptcy proceedings Herbert Haase (the "Debtor" or "Appellee") was involved in divorce litigation with his spouse, Laurette Haase. The United States Bankruptcy Court for the District of Maine granted Ms. Haase's motion for relief from stay to allow the divorce proceedings to continue, "provided that the stay would continue to enjoin the enforcement of the divorce decree until the bankruptcy court could review the decree."

The bankruptcy court approved The Second Application to Approve a Compromise or Controversy (the "Compromise") which provided that Ms. Haase will receive money from the Debtor's estate.[1] Unsecured creditors, Pawtucket Credit Union and Country Federal Credit Union (the "Creditors" or the "Appellants") appealed. The issue before this Panel is whether the bankruptcy court properly approved the Compromise which provides Ms. Haase with an allowable pre-petition claim. We affirm.

## II. BACKGROUND AND PROCEDURAL HISTORY

During the divorce litigation and before the filing of the involuntary petition in the bankruptcy court, the Maine District Court (the "Divorce Court") issued two orders concerning spousal support. First, it granted a preliminary injunction enjoining the Debtor from removing his wife from the family health insurance policy. In the second order, the court denied interim spousal support to Ms. Haase since the Debtor lacked the ability to pay such support (the "Spousal Support Order"). On August 15, 2001, the Appellants filed an involuntary bankruptcy petition against the Debtor. On September 17, 2001 (the "Petition Date"), the bankruptcy court issued an order for relief on the petition. On November 27, 2001, the bankruptcy court granted relief from stay allowing the divorce proceedings that were being held contemporaneously to continue.

Ms. Haase filed a $1,333,750.00 claim in the case. She asserted marital related claims (e.g., support and division of marital property) and a $1,000,000.00 intentional tort claim. On January 29, 2002, Ms. Haase commenced an adversary proceeding challenging the dischargeability of her claims against the Debtor. On February 19, 2002, the Debtor converted the Chapter 7 case to a Chapter 13.

The primary asset of the marriage is a residence located at 20 Vista Drive in South Portland, Maine. Ms. Haase and the Debtor are co-owners. On April 25, 2002, in response to Ms. Haase's adversary proceeding, the Debtor commenced an adversary proceeding to sell the marital residence. The residence has an estimated value of between $419,000 and $450,000. The Debtor claimed a $60,000 residence exemption pursuant to 14 M.R.S.A § 4422(1)(B) because of his disability.

On April 24, 2003, the Debtor and Ms. Haase filed the Compromise which the

---

1. The Debtor filed but withdrew the First Application to Compromise a Controversy after the Trustee and the Appellant objected to its terms. The Trustee did not object to the Compromise.

bankruptcy court approved. Specifically, the compromise provides: (1) a $20,000 pre-petition spousal support claim in favor of Ms. Haase, allowed as a priority claim; (2) a $8,611.26 postpetition claim for unpaid health insurance premiums; and (3) claims for the division of marital property. Ms. Haase's $1,000,000.00 tort claim will be settled for $50,000.00. Furthermore, the Compromise settles the adversary proceedings and provides that the Debtor will sell the marital residence for the discharge of all of Ms. Haase's claims with two exceptions. First, the Compromise will provide for nominal spousal support to be paid by the Debtor in the amount of $1.00 per year for up to ten years. Second, the Debtor has agreed to guarantee the amount of property Ms. Haase will receive from the bankruptcy case.

The bankruptcy court determined that, as a matter of law, the Divorce Court could retroactively modify the Spousal Support Order "upon a demonstration of expenses and need" and "upon the demonstration that there is or will become available a source of funding for it". This, in turn, would give Ms. Haase a pre-petition claim against the Debtor's estate. Pursuant to this reasoning, the bankruptcy court approved the Compromise which allows for a $20,000 prepetition, priority claim, in favor of Ms. Haase. The court reasoned that the prospect of delay is not an inviting prospect since "[t]he pot will be empty, there will be nothing left for the creditors, there will be nothing in it for the debtor by way of exempt assets, potentially there will be nothing in it for the professionals who will be—go unpaid, and the creditors who will receive even less than they're going to receive now." Moreover,

> [t]here was a substantial chance that [Ms. Haase's claims] could be resolved by a judgment in state court ... sub-

stantially in excess of the amount compromised. It would be inconvenient and expensive and would occasion great delay of it were litigated, and that the $50,000 amount is well within the range of reasonableness for purposes of compromising that claim." [2]

The Appellants filed this appeal arguing that because Ms. Haase cannot have an allowable pre-petition claim, pursuant to 11 U.S.C. § 502(b)(5), the bankruptcy court erred as a matter of law by allowing the Compromise.

## III.  DISCUSSION

### A.  *Jurisdiction and Standard of Review*

■ This Panel has jurisdiction to review appeals "from final judgments, order and decrees" pursuant to 28 U.S.C. § 158(a)(1). An order approving a Compromise is a final order. *See Appeal of Licht & Semonoff,* 796 F.2d 564, 569 (1st Cir.1986) (a final decision is a decision which "disposes all the rights of all the parties to an action" and is to be afforded a practical not a technical meaning).

■ This Panel independently reviews the bankruptcy court's decision by applying the clearly erroneous standard to findings of fact and de novo review to conclusions of law. *In re Ocasio,* 272 B.R. 815, 822 (1st Cir. BAP 2002); *Stoehr v. Mohamed,* 244 F.3d 206, 208 (1st Cir. 2001). A bankruptcy court's final ruling must stand absent either a mistake of law or an abuse of discretion, such as "ignoring a material factor that deserves significant weight, relying on an improper factor, or even if it mulls only the proper mix of factors, by making a serious mistake in judgment." *Siedle v. Putnam Invs., Inc.* 147 F.3d 7, 10 (1st Cir.1998).

**2.** Transcript, May 21, 2003, page 34.

## B. *The Healthco standard.*

■ It is well-settled in this Circuit that the bankruptcy court is expected to consider the following elements when approving a settlement agreement:

(1) the probability of success were the claim to be litigated—given the legal and evidentiary obstacles and the expense, inconvenience and delay entailed in its litigation—measured against the more definitive, concrete and immediate benefits attending the proposed settlement (so-called "best interests" standard); (2) a reasonable accommodation of the creditors' views regarding the proposed settlement; and (3) the experience and competence of the fiduciary proposing the settlement.

*In re Healthco International, Inc.,* 136 F.3d 45, 50 (1st Cir.1998) (citations omitted).

In *Healthco,* the Trustee identified several pertinent reasons for settling the claim which meet the best interests standard. For example, the estate faced a "formidable burden" in litigating the issue of whether the price received for the collateral was undermined. The court allowed the settlement agreement and reasoned that even if the debtor were to receive more money for the collateral, that would not offset the substantial burden imposed by the inconvenience and delay in litigating such issues.

## C. *Did the Compromise Meet the "Best Interests" Standard?*

Under the first prong of the Healthco test, we inquire whether the time and effort, expense and inconvenience of delay in litigating issues regarding Ms. Haase's claims was a substantial burden as opposed to the more definite, concrete and immediate benefit that the Compromise provided.[3]

### (i) *The Disputed Claim.*

The Appellants' primary argument is that the bankruptcy court erred as a matter of law by approving the Compromise because it gives Ms. Haase a $20,000 pre-petition, priority claim. They argue that since the Divorce Court denied relief to Ms. Haase prior to the Debtor filing his petition, she had no pre-petition spousal support claim cognizable under 11 U.S.C. § 502(b)(5).

The statute provides:

(b) Except as provided in subsection (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the state of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

. . . .

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5).

■ The Bankruptcy Code does not define "unmatured." Generally, however, the term is considered to mean "post-petition." *In re Cousins,* 209 F.3d 38, 41 (1st Cir.2000). Any postpetition alimony, maintenance or support claims are to be paid from the debtor's post-petition property and are non-dischargeable claims. *House Report No. 95–595, 95th Cong., 1st Sess.* 352–354 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6307–10. Pursuant to 11 U.S.C. § 502(b)(5), if Ms. Haase holds a mature claim, then her claim is allowable against the assets of the

---

3. Since the Appellants limited their argument to the analysis under the first prong, the "best interest standard" in *Healthco,* we shall do the same.

Debtor's estate. If not, her claim for support is to be paid from the Debtor's post-petition property.

The Appellants argue that we should follow the rule of *Harding v. Murray*, 623 A.2d 172 (Me.1993). That case involved a plaintiff ("Harding") who filed a complaint for divorce and a defendant ("Murray") who subsequently filed a chapter 7 bankruptcy petition. Murray was later discharged and thereafter, as part of a final divorce decree, Harding obtained a judgment which included an alimony award.[4]

Murray appealed the divorce judgment on the grounds that Harding was not entitled to, *inter alia*, an alimony award because her claims against him had been discharged. The Supreme Judicial Court of Maine held that Harding's right to payment arose once a judgment was entered on the divorce decree awarding Harding alimony which, in that case, occurred post-petition. It reasoned that at the time Murray filed his bankruptcy petition and received his discharge, Harding had no right to payment and, therefore no "claim." *See* 11 U.S.C. § 101(5). Further, the court pointed out that Murray's intervening bankruptcy had no effect on Harding's postbankruptcy right to alimony and separate maintenance. *See United States v. Sutton*, 786 F.2d 1305, 1306–07 (5th Cir.1986) (holding unmatured alimony support and maintenance claims are non-dischargeable under 11 U.S.C. § 523(a)(5)

and not allowable against the estate) (citing 11 U.S.C. § 502(b)(5)).

The Appellee recognizes that *Harding* stands for the proposition that a spouse in a pending divorce does not hold a pre-petition claim. He nevertheless asserts that *Harding* is inappropriate and that this court should instead apply *Davis v. Cox*, 274 B.R. 13 (Bankr.D.Me.2002).[5]

*Cox* involved a debtor ("Cox") who initiated a personal bankruptcy case during a contested divorce. Pursuant to 11 U.S.C. § 362, the state court was prevented from proceeding with the trial to divide the divorcing spouses marital property.[6] In response, the non-debtor spouse ("Davis") filed a motion upon which the bankruptcy court granted relief from the stay for the divorce to continue in state court.[7] The bankruptcy court granted the motion because the state court divorce action was virtually ready to be tried and it involved state law issues, but noted on the order that absent further order, the debtor's property was not to be turned over to Davis.

Eventually, the Maine district court entered its judgment with respect to the divorce and property division of the divorcing spouses. Specifically, and at issue, the Maine district court found that an Advest IRA account (the "Property"), valued at $90,000, was a part of the couple's marital property and distributed a portion to

---

**4.** *Harding* involved alimony rather than spousal support. For purposes of our analysis, the distinction is not significant.

**5.** When the Appellee first filed his brief, *Davis v. Cox* was being considered by The United States Court of Appeals for the First Circuit. The appellate court subsequently issued an opinion on January 14, 2004 and we shall give the relevant weight to its authority. *Davis v. Cox*, 356 F.3d 76 (1st Cir.2004).

**6.** Marital property is a term used pursuant to Maine state law which permits equitable division upon divorce of all property acquired by either party subsequent to the marriage.

**7.** The trial for the divorce action which was set after several unsuccessful attempts at an agreed settlement had already been postponed in lieu of Cox's threat to file a petition with the bankruptcy court. On April 5, 2000, Cox finally did file a bankruptcy petition which once again postponed the trial date.

Davis.[8] Neither party appealed from the divorce court's property division to a higher court in Maine.

Thereafter, the bankruptcy court determined that since Cox held legal title to the Property when he petitioned for the bankruptcy, it became part of the bankruptcy estate. It reasoned that Davis's right to any marital property which Cox had legal title was contingent and did not vest until the divorce judgment was handed down, an event occurring after the bankruptcy petition had been filed. *See also Harding* at 174. The bankruptcy court, nonetheless, followed *In re Palmer*, 78 B.R. 402 (Bankr. E.D.N.Y.1987), which held that a non-debtor spouse does have a general unsecured claim if there was an award, in favor of the non-debtor spouse, of distribution in a state matrimonial court. *Id.* at 406. As a result, *Cox* held that Davis acquired only a general, unsecured claim against Cox's bankruptcy estate for the amount awarded to her by the divorce court.

Davis appealed this ruling and the United States Court of Appeals for the First Circuit held that instead of an unsecured claim, Davis, under Maine law, *may* possess an equitable interest in the Property. Consequently, by virtue of 11 U.S.C. § 541(d), the property may be prevented from becoming part of Cox's bankruptcy estate. This equitable interest *may* impose a constructive trust, pursuant to state law, in the Property for the benefit of Davis. The First Circuit stated:

> On the present facts, especially given Cox's contemptuous behavior before the filing for bankruptcy, we think a Maine court, applying Maine law, would in these circumstances rule that, by the time he filed for bankruptcy, Cox held the Advest IRA upon a constructive

trust for his spouse, Davis, subject to the divorce court's ultimate determination of its ownership.

356 F.3d 76, 84–85 (1st Cir.2004).

Significantly, because the Property never became property of the estate, it was not necessary for the First Circuit to decide whether Davis held an unsecured claim. *See In re Palmer*, 78 B.R. 402 (Bankr.E.D.N.Y.1987) (treating the non-debtor spouse as having a claim); *see also Davis v. Cox*, 274 B.R. 13, 23 (Bankr. D.Me.2002) (following *Palmer* and stating that a non-debtor spouse retains an unsecured claim against the debtor's estate); *Davis v. Cox*, 356 F.3d 76, 96 (1st Cir.2004) (Cyr, Senior Circuit Judge, dissenting) (arguing that courts must recognize that settlements, between divorcing spouses, presumptively are "claims" in bankruptcy). *But see In re Perry*, 131 B.R. 763 (Bankr. D.Mass.1991) (concluding that the non-debtor spouse has no claim); *Harding v. Murray*, (explaining that non-debtor spouse had no "claim" for bankruptcy purposes because a right to payment does not arise until a judgment is entered on the divorce decree). The First Circuit relied heavily, however, on Maine law to determine that she had a constructive trust. *See Davis v. Cox*, 356 F.3d 76, 85 (1st Cir.2004) (allowing for a constructive trust since a Maine court, in applying Maine law, could find that one existed). Therefore, we review Maine state law to determine whether the denial of the Spousal Support Order could be retroactively overturned thereby giving Ms. Haase a pre-petition claim.

#### (ii) Maine State Law

There are a number of Maine cases which state in dicta that a divorce court, in

---

8. Davis was awarded $62,250. Since Cox had violated a preliminary injunction that prevented either spouse from "transferring, encumbering, concealing, selling or otherwise disposing of property," the court included a sanction in the award.

exercising its broad statutory powers *may,* upon a material change of circumstances, modify a support order retroactively.[9] For example, in *Button v. Button,* 222 A.2d 245 (Me.1966), the court recognized that orders for custody and support, entered in and after the decree of divorce, may be modified when changes in the circumstances allow the court to do so.

Furthermore, in *Wood v. Wood,* 407 A.2d 282, 287–88 (Me.1979), the court adopted a rule that child support orders may be retroactively modified, but not beginning before the filing of the motion to modify. This rule was later codified in 19–A M.R.S.A. § 2009(2) in 1993. Comparably, spousal support orders are "subject to modification when it appears that justice requires unless and to the extent the order awarding or modifying spousal support expressly states that the award, in whole of in part, is not subject to future modification." 19–A M.R.S.A. § 951–A (4). Consequently, it is reasonable to presume that since the spousal support statute does not contain any limitation on retroactivity, the legislative intent is that there is no such limitation.

■ Changes in circumstances are reviewed in each case, on a factual basis. *See Button v. Button,* 222 A.2d 245, 247 (Me.1966) (citing *Wilson v. Wilson,* 143 Me. 113, 56 A.2d 453 (1947); *White v. Shalit,* 136 Me. 65, 1 A.2d 765 (1938)). The Appellee argues that once it was clear that there would be real estate proceeds available to pay the support, the court could retroactively amend the Spousal Support Order. We agree.

Here, the divorce court first denied the Spousal Support Order because the Debtor's disability prevented him from working and consequently, he could not make payments to his wife. After this ruling, and during the divorce, Ms. Haase and the Debtor agreed to sell the residence worth between $419,000 and $450,000.[10] This change in the circumstances may result in the divorce court finding that the Spousal Support Order should be retroactively modified. Like *Cox,* in reviewing the facts presented, we find that a Maine court, in applying Maine law, *could* in these circumstances rule that the sale of the residence constituted a showing that would prompt the divorce court to retroactively modify its denial of the Spousal Support Order. Therefore, there is some possibility that Ms. Haase could hold a pre-petition claim, subject to the divorce court's ruling to retroactively overturn the denial of the Spousal Support Order. We are no more able than the United States Court of Appeals to divine the principles which the Maine Courts will adopt. The issue is very much in doubt.[11]

### (iii) Application of Healthco's "Best Interest Standard"

■ In this case, the bankruptcy court faced many issues, including the division of

---

9. *See e.g., Gardner v. Perry,* 405 A.2d 721, 724 (Me.1979); *Mahaney v. Crocker,* 149 Me. 76, 98 A.2d 728, 729 (1953); *Wilson v. Wilson,* 143 Me. 113, 56 A.2d 453, 456 (1947).

10. Under the terms in the Compromise, the property is to be sold free and clear of any liens, encumbrances, and interests, with any such liens, encumbrances and interests attaching to the proceeds of the sale. It is be sold in a commercially reasonable manner and be listed at a sale price of $459,000.00.

11. Less than two months after the United States Court of Appeals' decision in *Cox,* another panel expanded its ruling to stand for the proposition that "once a divorce is filed, each spouse is deemed to have a beneficial interest in marital property to which the other spouse holds legal title." *American Guarantee & Liability Ins. Co. v. Keiter,* 360 F.3d 13, 19, 2004 WL 350620 *6 (1st Cir.2004).

marital property, spousal support, the sale of real estate, the dischargeability of claims, and the liquidation of the $1,000,000 tort claim. It concluded there that the costly and time consuming litigation of these issues would have further burdened the estate.

We acknowledge the importance of the bankruptcy court's efforts to ensure that there would be an estate to administer. Moreover, there is no evidence that Ms. Haase's claims, if litigated, would result in a lesser amount than what the Compromise actually provides. We hold that the allowance of the Compromise offset the substantial burdens and risks that would have been encountered in further litigation of Ms. Haase's claims. Therefore, we are not persuaded by the Appellants' argument that there was sufficient uncertainty in the probability that Ms. Haase would prevail on her claims. This is further supported by our above analysis where we said that bankruptcy law does not necessarily preclude Ms. Haase from having a claim. Moreover, we demonstrated that it is possible that Ms. Haase could have a pre-petition claim, given that a Maine court, under Maine law, would retroactively modify the spousal support order.

The facts of this case weigh in favor of a settlement. Ms. Haase's initial claim was for $1,333,750.00. We recognize that Ms. Haase is receiving substantially less, and we hold this to be a substantial factor of the court's determination that the Compromise was, in fact, reasonable and negotiated in good faith. *See Healthco*, 136 F.3d at 50 (stating that the "best interests" standard contemplates a determination by the court of whether the proposed settlement was negotiated in good faith). Furthermore, the Trustee did not object to this Compromise, but did object to the first one.

We also point out that the court was attentive to the record, the fairness of the proposed settlement and the urgent need to compromise while there were still assets to distribute. The Compromise was reached at arm's length after substantial bargaining and after the parties worked long and hard to get to an agreement.

## IV. CONCLUSION

In light of the circumstances and the facts presented, we affirm the decision below.