**In re J. Gregory SKORICH, Debtor.**

**Edmond J. Ford, Chapter 7 Trustee, Plaintiff,**

v.

**Donna Skorich, Defendant.**

**Bankruptcy No. 04–12460–JMD.
Adversary No. 05–1063–JMD.**

United States Bankruptcy Court, D. New Hampshire.

Feb. 3, 2006.

Edmond J. Ford, Ford, Weaver & McDonald, P.A., Portsmouth, NH, Plaintiff/Attorney for Plaintiff.

Eleanor Wm. Dahar, Victor W. Dahar, P.A., Manchester, NH, for Defendant.

### MEMORANDUM OPINION

J. MICHAEL DEASY, Bankruptcy Judge.

## I. INTRODUCTION

Edmond J. Ford, chapter 7 trustee (the "Trustee"), filed a three count complaint against the Debtor's former spouse, Donna Skorich ("Skorich"), seeking (1) to avoid an alleged preferential transfer under 11 U.S.C. § 547; (2) to avoid transfers of property as a hypothetical lien creditor under 11 U.S.C. § 544(a); and (3) a declaratory judgment that, pursuant to the couple's final divorce decree (the "Final Decree"), Skorich holds an unsecured liquidated claim entitled to a distribution in accordance with the priority scheme of 11 U.S.C. § 507. Skorich filed a motion seeking summary judgment in her favor on all three counts based on the Court's October 19, 2005, decision in the Debtor's main bankruptcy case regarding the effect of the Final Decree on the rights and interests of the Trustee and Skorich in various items of property. *See In re Skorich,* 332 B.R. 77 (Bankr.D.N.H.2005) (hereinafter "*Skorich I*"). The Trustee filed a cross motion seeking partial summary judgment as to Count I. In his memorandum of law in support of his objection to Skorich's motion for summary judgment and his cross motion for partial summary judgment, the Trustee indicates that Count I is the only portion of the complaint not yet resolved because the Court addressed the issues raised in Counts II and III in *Skorich I*. At oral argument, the Trustee indicated, however, that there still may be issues regarding the valuation of the various items of property addressed in *Skorich I*.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this

proceeding by Federal Rule of Bankruptcy Procedure 7056, a summary judgment motion should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Genuine," in the context of Rule 56(c), "means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 38 (1st Cir. 1993) (*quoting United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992)). "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993). Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

## III. FACTS

The undisputed facts are as follows. On May 14, 2003, Skorich instituted a divorce proceeding in the Portsmouth Family Court ("Family Court"). On June 24, 2004, Skorich and the Debtor sold jointly owned real estate in Rangeley, Maine (the "Rangeley Property") and, pursuant to the Family Court's direction, they placed proceeds in excess of $300,000.00 in an escrow account under the joint control of divorce counsel for Skorich and the Debtor. Within a few weeks, on July 9, 2004 (the "Petition Date"), the Debtor filed a chapter 7 bankruptcy petition. On September 8, 2004, Skorich obtained relief from the automatic stay from this Court to proceed with her contested divorce in the Family Court. Skorich was granted relief for the purpose of obtaining a property division as part of a final divorce decree but was not granted relief to enforce any such property division without returning to this Court. On March 30, 2005, the Family Court issued the Final Decree and awarded the marital assets to Skorich, including the Debtor's share of the escrow funds totaling $147,684.21 (the "Escrow Funds"). Shortly thereafter, Skorich filed a motion in this Court seeking to enforce the Final Decree. On October 19, 2005, the Court issued a memorandum opinion and concluded that certain items of marital property were subject to administration by the Trustee despite their award to Skorich in the Final Decree while others, including the Escrow Funds, were not.

## IV. DISCUSSION

In his objection to Skorich's motion for summary judgment, the Trustee states that the only issue remaining in this adversary proceeding is whether the Trustee may recover the Escrow Funds as a preference within the meaning of section 547 of the Bankruptcy Code. The Trustee himself sought summary judgment as to only this claim. To establish his preference claim against Skorich, the Trustee must demonstrate the following:

A. A transfer of an interest of the Debtor in property;

B. To or for the benefit of a creditor;

C. For or on account of an antecedent debt owed by the Debtor before such transfer was made;

D. Made while the Debtor was insolvent;

E. On or within ninety days of the date of the filing of the petition; and

F. That enables such creditor to receive more than such creditor would receive if the case were a case un-

der chapter 7, the transfer had not been made, and such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The parties agreed at oral argument that the last three elements of the Trustee's preference cause of action have been satisfied.

### A. Transfer of Debtor's Interest in Property

■ Congress intended the term "transfer" to be as broad as possible and, therefore, defined the term expansively in the Bankruptcy Code. *In re Robotics Vision Sys., Inc.,* 322 B.R. 502, 508 (Bankr.D.N.H. 2005) (*citing Lloyd McKee Motors, Inc. v. Chrysler Corp. (In re Lloyd McKee Motors, Inc.),* 166 B.R. 725, 728 (Bankr. D.N.M.1993) (citing legislative history)). "Transfer" means "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property . . ." 11 U.S.C. § 101(54).

It is undisputed that the Debtor held an undivided one-half interest in the Rangeley Property prior to its sale. At the time of sale, this interest attached to the sale proceeds. Pursuant to the Family Court's direction, the Debtor's undivided one-half interest in the sale proceeds were placed into escrow. Under the statutory definition of the term, the Debtor's parting with these funds and their placement into escrow was a transfer of his interest in property under the Bankruptcy Code. *Besing v. Hawthorne (In re Besing),* 981 F.2d 1488, 1493 (5th Cir.1993) ("[B]ecause the Code's definition of 'transfer' expressly includes involuntary dispositions of property, dispositions of property brought about by state judicial proceedings clearly fall within its scope."); *Blackwell v. Wallace (In re Wallace),* 66 B.R. 834, 843 (Bankr.E.D.Mo. 1986) (indicating that the disposal of the debtor's undivided one-half interest in property as a tenant in common pursuant to a divorce decree is an involuntary transfer within the meaning of the Bankruptcy Code). Accordingly, the placement of the proceeds of the Rangeley Property into escrow at the direction of the Family Court was a transfer within the meaning of the Bankruptcy Code.

### B. Transfer Was to or for the Benefit of a Creditor

■ A "creditor" is defined in the Bankruptcy Code as an:

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim.

11 U.S.C. § 101(10). In the Bankruptcy Code, a "claim" means:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). Thus, at issue is whether Skorich had a right to payment or a right to an equitable remedy for breach of performance, which arose either prepetition or on the Petition Date. State law determines the existence of a claim based on a cause of action; federal law deter-

mines when a claim arises for bankruptcy purposes. *LeJeune v. LeJeune (In re LeJeune)*, 283 B.R. 398, 402 (Bankr.E.D.La. 2002).

▇▇▇▇ In *Skorich I*, the Court explained that under New Hampshire law a spouse's interest in property held separately by the other spouse does not arise until a divorce petition is filed or the other spouse dies. *Skorich I*, 332 B.R. at 83. The concept of marital property only arises once a divorce petition is filed. *Id.* Pursuant to state law, marital property consists of "all tangible and intangible property, real or personal, belonging to either or both of the parties to the divorce, whether the property is held in the name of either or both of the parties." *Id.* (*citing* NH RSA 458:16–a(I)). After a divorce petition is filed, the non-owner spouse has an equitable interest in marital property. *Id.* (*citing Bursey v. Town of Hudson*, 143 N.H. 42, 45, 719 A.2d 577 (1998)).

Some courts have concluded that divorcing spouses, such as Skorich, do not hold a claim within the meaning of the Bankruptcy Code and, therefore, are not creditors in situations where the divorce court has not yet made any award of alimony or any division of the marital assets. *See Roost v. Wilber (In re Parker)*, 241 B.R. 722 (Bankr.D.Or.1999) (concluding in the context of preferential transfer action that the division of marital property is not an award for "breach of performance" and is not intended as satisfaction of any claims and therefore the former spouse did not hold a "claim" and was not a "creditor" within the meaning of the Bankruptcy Code); *In re Compagnone*, 239 B.R. 841 (Bankr.D.Mass.1999) (concluding in the context of a discharge and dischargeability proceeding and a pending divorce that the estranged wife did not hold a "claim," did not qualify as a "creditor," and therefore did not have standing to bring the discharge and dischargeability proceeding); *In re Perry*, 131 B.R. 763 (Bankr.D.Mass. 1991) (concluding that the non-debtor spouse has no "claim") (*cited in Pawtucket Credit Union v. Haase (In re Haase)*, 306 B.R. 415, 421 (1st Cir. BAP 2004)); *Harding v. Murray*, 623 A.2d 172 (Me.1993) (explaining that a non-debtor spouse had no "claim" for bankruptcy purposes because a right to payment does not arise until a judgment is entered on the divorce decree) (*cited in Haase*, 306 B.R. at 421).

Other courts have ruled that a claim arising out of a pending divorce can be treated as having arisen prepetition, even when the actual right to payment matures postpetition, if the parties could have fairly contemplated a claim prior to bankruptcy. *In re Emelity*, 251 B.R. 151 (Bankr. S.D.Cal.2000) (*cited in LeJeune*, 283 B.R. at 401). *See also In re Palmer*, 78 B.R. 402 (Bankr.E.D.N.Y.1987) (treating the non-debtor spouse as having a claim) (*cited in Haase*, 306 B.R. at 421).

The Trustee contends that the First Circuit Court of Appeals has either expressly, or by necessary implication, found that under state divorce laws essentially identical to New Hampshire law, a non-debtor spouse holds a claim, as defined in the Bankruptcy Code, after a divorce petition is filed and before a final divorce decree is entered by the state court. *See Davis v. Cox*, 356 F.3d 76, 89–90 (1st Cir.2004). Further, the Trustee argues that the constructive trust imposed by the *Davis* court is an equitable remedy which necessarily requires that the beneficiary of the trust hold a claim for which the remedy is appropriate. The Court does not agree with the Trustee's contentions.

In *Davis*, the First Circuit Court of Appeals found that the primary goal of the state divorce law was to ensure that, upon divorce, each spouse received an equitable share of the so-called "marital property."

*Id.* at 85. In furtherance of that goal, state law provided for limitations on the right of both spouses to transfer, encumber, or sell the property of either or both of the parties, except in the usual course of business or for the necessities of life. *Id.* The *Davis* court found that after the filing of a divorce petition, the owner spouse held his individual property "subject to the non-owner spouse's 'right to equitable distribution' upon divorce." *Id.* at 88. Therefore, "[i]t logically follows that after a divorce proceeding has commenced the [state] courts will afford such reasonable protection as may be required to ensure that a non-owner spouse's rights to equitable distribution are not thwarted by the owner spouse prior to the time the court can issue its decree dividing the property." *Id.*

■ New Hampshire law is substantially identical to the state law in *Davis*. *See* NH RSA 458:16–b(I). In essence, the order directing the proceeds from the sale of the Rangeley Property be placed in escrow acted to preserve the Family Court's ability to implement an order of equitable distribution. When the Rangeley Property was sold, the undivided one-half interests held by Skorich and by the Debtor attached to the proceeds. When the proceeds were placed in escrow by order of the Family Court, title was transferred from the respective owner spouses to the escrow agents. *Davis*, 356 F.3d at 93. Thereafter, the former owner spouses each held only a contingent right to the proceeds placed in escrow, including the Escrow Funds. *Id.* at 94. Therefore, Skorich's contingent right in the Escrow Funds was a property interest. Skorich had no right under state law to payment from the Escrow Funds until the Family Court determined she was entitled to an equitable distribution from those funds, which the Family Court did not do until it issued the Final Decree on March 30, 2005. Accordingly, Skorich did not hold a claim against the bankruptcy estate or against the Debtor's contingent interest in the Escrow Funds at the time the proceeds of the Rangeley Property were transferred into escrow or on the Petition Date. Since Skorich did not hold a claim against the bankruptcy estate's interest in the Escrow Funds, she is not a "creditor" of the bankruptcy estate with respect to her interest in the Escrow Funds. 11 U.S.C. §§ 101(5), 101(10).

### C. Transfer Was Made for or on Account of an Antecedent Debt

■ The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). As determined above, Skorich did not hold a claim against the Escrow Funds. Therefore, the transfer of those funds into escrow was not on account of a debt, antecedent or otherwise.

### V. CONCLUSION

■ When property that is part of a marital estate, in accordance with New Hampshire divorce law, is transferred into escrow at the direction of a family court pending a final divorce decree, any title to that property, which had existed in either one or both of the spouses at the time of the transfer, is divested. The former owner spouse is left with a contingent interest in the funds in escrow. Such contingent interest is not a "claim" within the meaning of the Bankruptcy Code. It is a property interest subject to further order of the family court pursuant to applicable state divorce law. Because the Trustee did not establish that Skorich was a creditor or that the transfer was on account of any antecedent debt, the transfer of the Escrow Funds cannot be avoided as a preference under section 547(b) of the Bankruptcy Code. Accordingly, the Trustee's motion

for partial summary judgment must be denied and Skorich's motion for summary judgment as to Count I must be granted.[1]

Skorich's motion for summary judgment as to Counts II and III must be denied as moot in light of *Skorich I.* Any issues regarding valuation may be raised in the Debtor's main bankruptcy case.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order and judgment consistent with this opinion.

---

1. In this case there are no allegations that the escrow was voluntarily entered into by the Debtor and his former spouse or that they in any way sought an escrow order from the Family Court in order to defraud the Debtor's creditors or to prefer any claim which Skorich might have had as a result of the divorce proceeding. Accordingly, the Court has not considered what impact any such allegations might have had on the outcome of this case.