Cheshire
No. 81-056

### Manya Murano

v.

### Robert G. Murano

March 10, 1982

224

*Bragdon, Berkson & Mangones,* of Keene (*H. Neil Berkson* on the brief and orally), for the plaintiff.

*Joseph C. Krolikowski P.A.,* of Nashua (*Joseph C. Krolikowski* on the brief and orally), for the defendant.

PER CURIAM. In this marital case, both parties challenge a Superior Court (*Pappagianis,* J.) decree approving a Master's (*Earl J. Dearborn,* Esq.) recommendation for the division of their property. The defendant also argues that the master improperly permitted him to appear at trial pro se. We affirm and remand for further proceedings consistent with this decision.

The plaintiff, Manya Murano, and the defendant, Robert Murano, were married in New York City in 1964. They had one child, Adam, who was born in 1972. The parties separated at the beginning of 1974, and the plaintiff and her son went to live at the residence of the plaintiff's mother. At the time of separation, the parties agreed to sell their jointly owned house in Garrison, New York, and to divide the proceeds of the sale equally. Although they sold the house in July 1974, the plaintiff claimed that she never received her share of the proceeds.

In September 1974, the defendant purchased real estate in Chesterfield, New Hampshire. He paid $15,000 for the property and received a deed in his own name alone. Approximately $6,600 of the purchase price came from his father. Shortly after the defendant purchased the real estate, the plaintiff, dissatisfied with living conditions at her mother's residence, asked the defendant whether she and Adam could reside at the newly-purchased property. The defendant, who was not using the property, agreed, and the plaintiff and Adam moved to the Chesterfield property where they lived from 1974 until recently, when the house burned down. During this period, the parties did not resume marital relations. The defendant paid taxes on the real estate, but resided on the premises only for brief periods. Since 1975, he has lived with another woman, by whom he has had three children.

In March 1980, the plaintiff filed a libel for divorce on grounds of adultery, extreme cruelty, and irreconcilable differences causing the irremediable breakdown of their marriage. At the defendant's request, the master permitted him to appear at trial pro se. Following the trial, the master recommended a divorce based on irreconcilable differences. He ordered the parties to sell the Chesterfield property and to divide the net proceeds equally. He appointed a commissioner to supervise the sale in case either party refused to comply with the order. In addition, he recommended that the defendant pay the plaintiff thirty dollars per week as child support. The superior court entered a decree in accordance with the master's recommendations, and both parties appealed to this court.

We first address the defendant's argument that the master erred when he permitted the defendant to represent himself, without advising him of the potential consequences of appearing pro se.

■ The record showed that counsel represented the defendant during the period prior to the trial. On the day of the trial, the defendant made a motion to appear pro se because of financial constraints and his special interest in the case. The plaintiff's

attorney objected to this motion. With the defendant present, the plaintiff's attorney explained that a pro se appearance would inject emotional elements into the litigation, and would therefore have a detrimental impact on both parties. He argued that the defendant would obtain better representation by retaining an attorney. Immediately after the plaintiff's attorney stated these concerns, the master asked the defendant whether he had heard the attorney's remarks and whether he fully understood the situation. The defendant replied in the affirmative; he stated that he assumed the liabilities of self-representation, and that his former attorney had thoroughly advised him about continuing the case pro se. As a result, he cannot validly claim that the master deprived him of effective assistance of counsel by permitting him to proceed pro se. *State v. Weitzman*, 121 N.H. 83, 86–87, 427 A.2d 3, 5 (1981); *cf. Austin v. Ellis*, 119 N.H. 741, 743, 408 A.2d 784, 785 (1979).

We now turn to the central claims of the parties.

The defendant argues that the master erred when he awarded rights in the Chesterfield property to the plaintiff. He contends that he and the plaintiff contractually agreed to a final division of their marital estate in January or February 1974, and that the plaintiff was estopped from claiming any of his assets after that date. The defendant also claims that the funds which his father provided toward the purchase price of the real estate constituted a loan, and that the master erred in failing to account for this sum. Accordingly, he argues that, in the event this court upholds the ordered sale of the property, the commissioner should repay the loan from the equity of the property, prior to dividing the proceeds.

It is well established in this jurisdiction that the trial court has broad authority and discretion with respect to the division of property upon divorce. *Henderson v. Henderson*, 121 N.H. 807, 809, 435 A.2d 133, 135 (1981); *Buckner v. Buckner*, 120 N.H. 402, 404, 415 A.2d 871, 873 (1980). The trial court may order redistribution of any property falling within the joint marital estate, or within the individual estates of either spouse. *Baker v. Baker*, 120 N.H. 645, 647, 421 A.2d 998, 1000 (1980); *see* RSA 458:19 (amended by Laws 1981, 275:1); RSA 458:22. We will not overturn a court's order for the division of property unless the court abused its discretion. *Henderson v. Henderson*, 121 N.H. at 809, 435 A.2d at 135; *Hanson v. Hanson*, 121 N.H. 719, 720, 433 A.2d 1310, 1311 (1981).

We have acknowledged numerous factors which a court may find relevant in the division of property. The assets and

income of the parties constitute an important factor. *Baker v. Baker*, 120 N.H. at 648–49, 421 A.2d at 1001. Additionally, particularly when the parties possess meager assets, the husband's ability to support his former wife and their children must be given careful consideration. *Comer v. Comer*, 110 N.H. 505, 507, 272 A.2d 586, 587 (1970). Other factors include the respective contributions of the spouses in terms of services and money. *Henderson v. Henderson*, 121 N.H. at 810, 435 A.2d at 135; *Comer v. Comer*, 110 N.H. at 508, 272 A.2d at 587–88.

The parties to this controversy did not possess extensive assets; the Chesterfield property and a diamond engagement ring were their major assets. The record revealed that the defendant had failed to maintain a steady income for many years, and that serious doubts existed regarding his ability to provide future support for his ex-wife and son. The record also showed that the plaintiff had acted as homemaker and wage-earner for the parties' son from 1974 to 1981. We hold that this evidence provided the master with a sufficient basis for awarding a fifty-percent interest in the Chesterfield property to the plaintiff.

In addition, we find that the defendant failed to introduce sufficient evidence supporting the existence of a contract in 1974 to permanently divide the marital property. The plaintiff therefore was not estopped from asserting a claim to the Chesterfield property.

Furthermore, we reject the defendant's argument that the master should have treated his father's financial contributions as a loan. A transfer of property between family members creates a rebuttable presumption that a gift was intended. *See Shelley v. Landry*, 97 N.H. 27, 29, 79 A.2d 626, 628 (1951); *cf. Chamberlin v. Chamberlin*, 116 N.H. 368, 370–71, 359 A.2d 631, 633 (1976). In this case, the evidence showed that the defendant neither executed a promissory note nor gave a mortgage to his father. The master could properly have found that the defendant failed to rebut the presumption that his father provided the funds as a gift. Consequently, the master was not required to recommend the use of the Chesterfield sale proceeds for repayment of the contributions made by the defendant's father.

The plaintiff, like the defendant, presents numerous arguments on this appeal. She first argues that the master abused his discretion in recommending the sale of the Chesterfield property. She claims that the master should have awarded the entire property to her because of the contributions which she made to the upbringing

of Adam, the alleged use by the defendant of her share of the Garrison property sale proceeds to purchase the Chesterfield property, and the improbability of forthcoming support payments from the defendant.

■■ As previously stated, the trial court possesses broad discretion in the division of property, and may consider several factors in its decision. *Henderson v. Henderson,* 121 N.H. at 809–10, 435 A.2d at 135. The record in this case discloses that the defendant purchased the Chesterfield property with funds which he and his father provided; the plaintiff failed to prove that the defendant used her funds in purchasing the property. The evidence revealed that the defendant permitted the plaintiff and Adam to live on the premises without any obligation for seven years. Furthermore, the defendant's personal finances were insubstantial, and his potential earning capacity did not appear promising. Thus, the defendant's personal investment in the property, his willingness to provide rent and tax free accommodations for his family, and his genuine need for additional funds, warranted the award to him of a fifty-percent interest in the Chesterfield property.

The plaintiff next argues that the master erred when he denied her a divorce on grounds of adultery and granted the divorce instead for irreconcilable differences.

■ We disagree. As previously noted, the *plaintiff's* libel for divorce included a specific count alleging *irreconcilable differences.* The evidence revealed that the parties separated at the beginning 1974 as a result of mutual differences. Although the record indicated that the defendant had a relationship with another woman, the evidence showed that this relationship began after the plaintiff and the defendant had separated. We hold that the master, in his sound discretion, could properly find that the parties' general incompatibility was the primary cause of the marital breakdown. *See* 1 NELSON, ON DIVORCE AND ANNULMENT § 1.06, at 15 (2d ed. 1945); *cf. Woodruff v. Woodruff,* 114 N.H. 365, 367, 320 A.2d 661, 663 (1974); *Ballou v. Ballou,* 95 N.H. 105, 105–06, 58 A.2d 311, 312 (1948). In addition, the master's decision granting the divorce on grounds of irreconcilable differences was consistent with the intent of RSA 458:7-a (Supp. 1979) to "minimize the acrimony attending divorce proceedings." *Murphy v. Murphy,* 116 N.H. 672, 673, 366 A.2d 479, 481 (1976) (quoting *Desrochers v. Desrochers,* 115 N.H. 591, 594, 347 A.2d 150, 153 (1975)). We find no error in this decision.

The plaintiff further challenges the provisions in the master's recommendations regarding the deduction of certain costs from

the proceeds of the Chesterfield realty sale. The provisions state that if either party refuses to sell the real estate, the appointed commissioner should sell the property, deduct the costs of sale and the payment of any liens, and distribute the net proceeds to the parties. The plaintiff contends that the provisions for deductions are invalid because, in effect, they charge an innocent party for costs resulting solely from the other party's refusal to comply with the order, and for subsequent liens arising entirely from the other party's obligations.

■ We agree that it would be unjust to charge an innocent party for expenses resulting from the conduct of another party. This result might conceivably destroy all of the rights which the innocent party obtained under the property settlement, thereby rendering inequitable a property division that initially appeared equitable. *See Baker v. Baker*, 120 N.H. at 648, 421 A.2d at 1000–01. We hold that the parties may be charged individually for the losses which they cause. Accordingly, we remand for modification of the disputed provisions.

Finally, the plaintiff raises a legitimate concern over the improbability of forthcoming child-support payments from the defendant. The record shows that the defendant has failed to comply with the outstanding order for child support, and that his financial status remains precarious. Thus, serious doubts exist regarding the plaintiff's prospects for receiving child-support payments in the future.

■■ Subsequent to the master's 1980 decision, this court established that a trial court has the authority to modify settlement in order to provide security for the payment of support. *See Dubois v. Dubois*, 121 N.H. 664, 668, 433 A.2d 1277, 1280 (1981); *cf. Sheldon v. Sanderson*, 121 N.H. 845, 847, 435 A.2d 532, 533 (1981). We stated that the court could consider any reasonable security arrangement to insure the fulfillment of a party's support obligation. *Dubois v. Dubois*, 121 N.H. at 669, 433 A.2d at 1280–81. For instance, the master in this case might recommend the appointment of a trustee who would receive the defendant's share of the proceeds from the sale of the Chesterfield property and make the requisite child-support payments to the plaintiff. *Cf. id.*, 433 A.2d at 1280–81. In light of the plaintiff's prospects for receiving child-support payments from the defendant, we remand for consideration of the implementation of a reasonable security arrangement.

In sum, we hold that neither the granting of the divorce nor the division of property constituted an abuse of the master's discretion. We do not require the master to alter the amount of the respective

awards under the property division. We remand only for the two purposes stated above.

*Affirmed and remanded.*