Portsmouth Family Division
No. 2001-329
Rockingham
No. 2002-130

IN THE MATTER OF JEANNE JASPER-O'NEIL AND NORMAN E. O'NEIL

CHARTER FINANCIAL, INC. (BY ITS SUCCESSOR WELLS FARGO
EQUIPMENT FINANCE, INC.)

v.

AURORA GRAPHICS, INC. & a.

STEWART TITLE OF NORTHERN NEW ENGLAND, INC.

v.

JEANNE M. JASPER & a.

Argued: November 13, 2002
Opinion Issued: January 27, 2003

*Ahlgren Perrault & Turner, P.A.*, of Portsmouth (*John L. Ahlgren* on the brief and orally), for Wells Fargo Equipment Finance, Inc.

*Chubrich & Harrigan, P.A.*, of Portsmouth (*Michael E. Chubrich* on the brief and orally), for Jeanne M. Jasper.

BROCK, C.J. In these consolidated appeals, Wells Fargo Equipment Finance, Inc. (Wells Fargo) appeals an order of the Family Division (*DeVries*, J.) approving the Marital Master's (*Harriet J. Fishman*, Esq.) recommendation to deny its petition to intervene in the divorce proceedings of Jeanne Jasper-O'Neil (Jasper) and Norman E. O'Neil (O'Neil). Jasper appeals a Superior Court (*Abramson*, J.) order ruling that her divorce had no effect on Wells Fargo's properly recorded secured attachment on O'Neil's fifty percent interest in the marital home and that Wells Fargo's interest has priority over an Internal Revenue Service (IRS) tax lien. We affirm both the denial of the petition to intervene in the

divorce proceedings and the order finding that the divorce had no effect on Wells Fargo's attachment. We reverse the finding that Wells Fargo's interest has priority over the IRS tax lien.

On May 12, 2000, Wells Fargo's predecessor obtained a prejudgment attachment against O'Neil's interest in his marital home. Jasper and O'Neil were divorced in 2001. The divorce decree incorporated the parties' stipulation that Jasper was awarded all interest in the marital home "as if [O'Neil] had predeceased [her]." Wells Fargo, noting its concern that the stipulation was designed to extinguish its attachment, sought to intervene in the divorce proceedings. The family division denied the motion to intervene.

In order to allow Jasper to sell the residence and convey marketable title, Wells Fargo agreed to discharge its attachment and allow one-half of the net sales proceeds to be paid to Jasper while the other half was paid into an escrow account subject to a bill of interpleader. On June 14, 2000, O'Neil defaulted in a civil collection action brought by Wells Fargo. On March 20, 2001, Wells Fargo filed a motion for summary judgment against O'Neil, William P. James and their business, Aurora Graphics, Inc. The superior court consolidated the equity proceeding on the bill of interpleader with the collection action, and on May 23, 2001, it granted Wells Fargo's motion for summary judgment, awarding Wells Fargo approximately $355,000.

Meanwhile, on May 7, 2001, the IRS filed notice of a tax lien against O'Neil for unpaid taxes from 1995 in the amount of $28,987.36 and against both Jasper and O'Neil for unpaid taxes from 1996 and 1998 totaling $82,832.94. The liens listed their New Hampshire marital home and were recorded in the Rockingham County Registry of Deeds.

On July 10, 2001, Jasper filed a motion requesting that the superior court declare that the IRS held a first priority claim on the interpleaded funds. The court ruled that the divorce had no effect on Wells Fargo's interest in the interpleaded funds, and that Wells Fargo held a properly recorded secured attachment on O'Neil's fifty percent interest in the marital home. The court further concluded that Wells Fargo's interest took priority over the IRS tax lien.

*I. Intervention and Impact of Divorce on Attachment*

■ Because we conclude that the divorce decree did not defeat the attachment, we need not decide whether Wells Fargo should have been allowed to intervene in the parties' divorce action. "No attachment of any interest in real estate shall be defeated by any change in the nature of the debtor's right thereto, . . . but the whole interest of the debtor, upon such change, shall be held by the attachment." RSA 511:17 (1997). Hence a

transaction between a debtor and a third party is ineffective to remove an attachment lien from the property. *See Rodman v. Young*, 141 N.H. 236, 238 (1996). "It is the [debtor's] interest in the real estate at the time the attachment was originally made, and the lien resulting therefrom, that controls . . . ." *Id.* Thus, regardless of the stipulations regarding the division of marital property, the residence remained subject to Wells Fargo's pre-divorce attachment.

## II. Relative Priority of Prejudgment Attachment and IRS Tax Lien

Jasper appeals the superior court's finding that Wells Fargo's interest in the interpleaded funds has priority over the IRS tax lien. She argues that a perfected federal tax lien takes priority over a prejudgment attachment. We agree.

"[W]hen a federal lien is involved, the relative priority between competing liens is a question of federal law . . . ." *United States v. Dishman Independent Oil, Inc.*, 46 F.3d 523, 526 (6th Cir. 1995). "A federal tax lien takes priority over a competing lien unless the competing lien falls within one of the statutory priorities set forth in the Internal Revenue Code, or is a valid state-created lien that became choate prior to the perfection of the federal tax lien." *United States v. New York State Dept. of Taxation and Fin.*, 138 F. Supp. 2d 392, 396 (W.D.N.Y. 2001). Both federal common law and the Federal Tax Lien Act of 1966 govern the resolution of priorities among competing claims when the United States asserts a lien for unpaid taxes. *Id.; see* 26 U.S.C.A. §§ 6321-6326 (2002). In this case, Wells Fargo's claim is based on its asserted status as a judgment lien creditor under 26 U.S.C.A. § 6323.

A federal tax lien "shall not be valid as against any . . . judgment lien creditor until notice" has been properly filed. 26 U.S.C.A. § 6323(a). A judgment lien creditor's lien will take priority over a tax lien if the lien is perfected and choate before the IRS properly files its Notice of Federal Tax Lien under 26 U.S.C.A. § 6323; on the other hand, for the IRS to prevail over a perfected judgment lien, it must demonstrate that its lien was perfected prior in time. *First N.H. Bank v. Carrabassett Inv.*, 813 F. Supp 919, 922-23 (D.N.H. 1993). Thus, under the statute, the IRS' properly filed lien would have first priority unless Wells Fargo had attained the status of a judgment lien creditor before the IRS filed its lien.

Federal regulations define a judgment lien creditor as

> a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a

judgment lien creditor is a person who has perfected a lien under the judgment on the property involved. A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established. Accordingly, *a judgment lien does not include an attachment or garnishment lien until the lien has ripened into judgment*, even though under local law the lien of the judgment relates back to an earlier date.

26 C.F.R. § 301.6323(h)-1(g) (2002) (emphasis added). A properly filed federal tax lien takes priority when it is recorded subsequent to the date of an attachment lien but prior to the date the attaching creditor obtains judgment. *See Dishman*, 46 F.3d at 527; *see also Middlesex Sav. Bank v. Johnson*, 777 F. Supp. 1024, 1028-29 (D. Mass. 1991); 9 T. EISENBERG, DEBTOR-CREDITOR LAW 39-101 to 39-102 (2002).

Here, the IRS tax lien was properly filed on May 7, 2001. Wells Fargo had attached O'Neil's property before the IRS lien was filed, but the superior court did not grant Wells Fargo's motion for summary judgment until May 23, 2001. Although the identity of the lienor and the property subject to the lien were known, the amount of the lien remained uncertain until Wells Fargo's attachment lien ripened into a judgment. As of May 7, 2001, Wells Fargo was not a judgment lien creditor because it had not yet obtained a judgment. Therefore the IRS tax lien takes priority over Wells Fargo's lien.

Wells Fargo relies upon *United States v. Estate of Romani*, 523 U.S. 517, 523-24 (1998), to conclude that it had a choate lien prior to May 7, 2001. *Romani* is readily distinguishable, however, because it was "undisputed that the judgment creditor acquired a valid lien on the real property [at issue] . . . before the Government served notice of its tax liens." *Id*. In fact, the lien was choate because the lower court had entered a judgment in favor of the creditor, and that judgment was properly recorded. *Id*. at 519-20.

Wells Fargo argues that its lien takes priority over the IRS tax lien because it had an "absolute right" to judgment on April 23, 2001. In support of this argument, Wells Fargo cites the introductory clause to a sentence from the trial court's September 26, 2001 order, which was amended after motions to reconsider by the January 2002 order at issue in this appeal. The September order stated, "While the Court's order essentially creates a declaration that plaintiff could have received judgment on April 23, 2001, *this declaration does not change the effective date of plaintiff's status as a judgment lien creditor*." (Emphasis added.) The order correctly noted that Wells Fargo's priority was contingent upon it receiving a final judgment. Therefore, we are not persuaded by any of

Wells Fargo's arguments that are predicated on its asserted right to judgment on April 23, 2001.

The record does not reveal that any arguments regarding the impact of the parties' conditional partial settlement agreement were raised before the superior court. Thus, those arguments were not properly preserved for our review. *Merrill Lynch Futures v. Sands*, 143 N.H. 507, 511 (1999).

Jasper asserts that the superior court erred by failing to determine the value of O'Neil's interest in the marital home. Assuming without deciding that this issue was preserved for appeal, we note that the trial court's order states that Wells Fargo has "a secured attachment, properly recorded, on Mr. O'Neil's 50% interest in [the] marital home." We are not persuaded that this finding was erroneous.

Wells Fargo argues in the alternative that if the IRS lien takes priority over its lien, that it should be entitled to the balance of the interpleaded funds after the IRS tax lien has been satisfied. We agree. *See* RSA 511:56 – :57 (1997).

Issues raised in the notice of appeal but not briefed are deemed waived. *Collins v. City of Manchester*, 147 N.H. 701, 706 (2002).

*Affirmed in part; reversed in part; remanded.*

BRODERICK, NADEAU, DALIANIS and DUGGAN, JJ., concurred.