**In re J. Gregory SKORICH, Debtor.**

**No. 04–12460–JMD.**

United States Bankruptcy Court,
D. New Hampshire.

Oct. 19, 2005.

Edmond J. Ford, Esq., Ford, Weaver & McDonald, P.A., Portsmouth, Chapter 7 Trustee.

Eleanor Wm. Dahar, Esq., Victor W. Dahar, P.A., Manchester, for Donna Skorich.

## MEMORANDUM OPINION

J. MICHAEL DEASY, Bankruptcy Judge.

### I. INTRODUCTION

Donna Skorich, the Debtor's former spouse ("Skorich"), and Edmond Ford, the chapter 7 trustee (the "Trustee") disagree over the effect of a final divorce decree issued by the Portsmouth Family Court (the "Family Court") on the rights and interests of Skorich and the Trustee in and to various items of property. This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### II. BACKGROUND

This case involves the collision of the interests of a non-debtor ex-spouse and a chapter 7 trustee at the intersection of state marital law and federal bankruptcy law. Family courts and bankruptcy courts are both courts of equity. Bankruptcy courts must work within the boundaries of Congressional policy as expressed in the Bankruptcy Code[1] which emphasizes a fresh start for debtors and distribution of assets to creditors based upon their pre-petition property rights. Family courts have broad discretion to apply equitable principles, guided by state policy considerations as expressed by the state legislature, to provide for an equitable, albeit not always equal, distribution between the two parties and for the ongoing support and maintenance of former spouses and minor children. Family court decisions may also be reviewed and adjusted from time to

---

1. In this opinion the term "Bankruptcy Code" shall mean title 11 of United States Code as effective in this case, which was filed on July 9, 2004. 11 U.S.C. §§ 101–1330.

time to address changed circumstances after the entry of a final divorce decree. Despite the differences in discretion and policy constraints, the decisions of both courts have a significant impact on the lives and emotions of real people. Notwithstanding their status as courts of equity, bankruptcy and family court decisions must reflect the policy judgments and statutory language in applicable law, not simply the court's own view of what is fair and just.

## A. Procedural Background

Shortly after the commencement of this bankruptcy case, Skorich sought and obtained limited relief from the automatic stay to continue a prepetition divorce action in state court. Skorich was granted relief for the purpose of obtaining a property division as part of a final divorce decree, but could not enforce any property division without returning to this Court. Shortly after the Family Court issued a final decree of divorce on March 29, 2005 (the "Final Decree"), Skorich filed a motion to enforce the Final Decree with this Court. The Trustee and other interested parties objected.

After a preliminary hearing, the Court ordered the parties to file an agreed statement of facts and a stipulation regarding the specific items or categories of property they agreed were property of the bankruptcy estate, not property of the bankruptcy estate and in dispute. The parties filed the required property stipulation, agreed statement of facts, and memoranda of law. The Court heard oral argument on June 13, 2005, and took the matter under advisement.

## B. Factual Background

The issues in dispute have been submitted to the Court on a stipulated factual record. The parties agree on the following chronology of events in the divorce and bankruptcy cases:

May 14, 2003 Skorich filed a petition for divorce with the Family Court.

June 24, 2004 Jointly owned real estate in Rangeley, Maine (the "Rangeley Property") was sold and the proceeds were placed in an escrow account under the joint control of divorce counsel for Skorich and the Debtor.

July 9, 2004 The Debtor filed a bankruptcy petition under chapter 7.

September 8, 2004 The Court granted Skorich limited relief from the automatic stay to proceed with the divorce action in the Family Court for the limited purpose of determining, but not enforcing, a property division.[2]

December 23, 2004 Skorich Enterprises, Inc. filed a bankruptcy petition under chapter 7.

March 23, 2005 The Debtor voluntarily waived his discharge in bankruptcy.

March 29, 2005 The Family Court issued the Final Decree.

The parties also agree on their respective interests in the majority of items or categories of property as being property of the bankruptcy estate or not property of the bankruptcy estate. The remaining items or categories remaining in dispute are:

1. Proceeds from the sale of the Rangeley Property held in escrow

---

**2.** Subsequent to the filing of his bankruptcy petition, the Debtor left the state and was eventually defaulted in the divorce proceed-

ing. The Trustee intervened in the divorce proceeding and participated to a limited extent.

by counsel for Skorich in the amount of $147,684.21 (the "Escrow Funds").

2. Furniture located at the marital home.[3]

3. Non-corporate funds paid to or received by the Debtor after October 1, 2004.

4. The stock of Skorich Enterprises, Inc. and "Cool Foodservice." [4]

5. Cash on hand.[5]

6. Jewelry.[6]

## C. Legal Arguments

Skorich maintains that the Final Decree controls the distribution of all of the disputed property pursuant to the holding in *Davis v. Cox*, 356 F.3d 76 (1st Cir.2004), because the Trustee appeared in the Family Court as a party to the divorce proceeding. She also contends that any attempt by the Trustee to set aside the terms of the Final Decree is barred by the *Rooker–Feldman* doctrine. Finally, she asserts that the Escrow Funds are not subject to the Trustee's avoidance powers under section 547 of the Bankruptcy Code. The Trustee argues that the sole issue before the Court is the effect of the Final Decree on the distribution of the bankruptcy estate in light of the Trustee's status as a hypothetical lien creditor under section 544(a) of the Bankruptcy Code and applicable state law.

## III. RELEVANT LAW

### A. The Holdings of *Davis v. Cox*

The First Circuit's decision in *Davis v. Cox* dealt with the impact of a final divorce decree on the distribution of property in a chapter 7 bankruptcy proceeding. Like this case, the chronology of events in *Davis* was the filing of a divorce petition, the filing of a bankruptcy petition, and the issuance a final divorce decree after the entry of a bankruptcy court order granting relief from the automatic stay for the limited purpose of resolving the equitable distribution of property under state law. Also similar to this case, on the date of filing of the bankruptcy petition, the divorce counsel for the parties were holding funds in escrow pursuant to the direction of the divorce court. The decision in *Davis* involved two questions with striking similarities to the facts of this case.

---

**3.** In Schedule B.4 the Debtor listed "half interest in furniture Rangely, ME and Rye, NH" as having a value of "5,000.00 approx" and in Schedule C the Debtor claimed an exemption in such interest in the amount $3,500.00 pursuant to NH RSA 511:2(III). The property stipulation does not state whether the Rangely furniture was sold with the proceeds becoming part of the Escrow Funds or whether they were relocated to the marital home or another location.

**4.** In Schedule B.12 the Debtor listed the stock of "Cool Food Service of NH, Inc." with a value of $200.00 and 500 shares of "Skorich Enterprises" with a value of zero. In Schedule C the Debtor claimed an exemption of $8,000.00 in the Skorich Enterprises stock pursuant to NH RSA 511:2(XVIII).

**5.** The property stipulation does not further identify or list the amount of the disputed cash on hand. Accordingly, the Court shall deem the disputed "cash on hand" to be the $250.00 of cash on hand listed by the Debtor in Schedule B.1.

**6.** Under the terms of the property stipulation, Skorich and the Trustee agree that "jewelry purchased by Mr. Skorich (2003)," "Watch purchased" and "Gregs (sic) other watches and personal property" were property of the bankruptcy estate and that "jewelry" was property in dispute. For the purposes of this opinion the Court shall deem the disputed jewelry category to include the "half interest, jewelry" scheduled by the Debtor with an unknown value in Schedule B.7, less the items or categories expressly agreed by the parties to be property of the bankruptcy estate.

The first issue in *Davis* involved an IRA account which the debtor elected under section 522(b) to claim as exempt under applicable state law. *Davis*, 356 F.3d at 81 n. 4. In *Davis* the divorce court awarded a majority of the funds in the IRA account, which was solely in the name of the debtor spouse, to the non-debtor spouse [7] to pay guardian ad litem fees and as a sanction for the contempt of the debtor spouse who transferred moneys out of the IRA in violation of an injunction issued by the divorce court. The bankruptcy court held that the debtor's spouses's interest in the IRA was property of the bankruptcy estate as of the date of the bankruptcy petition and, therefore, the postpetition divorce decree did not create rights in that account in favor of the non-debtor spouse, but rather the decree simply provided her with an unsecured claim in the awarded amount. The circuit court noted that the debtor had claimed all of the IRA as exempt and, therefore, no portion of the IRA would be paid to the debtor's creditors or the non-debtor spouse. The circuit court held that, under Maine law, the non-debtor spouse had a sufficient equitable interest in the IRA on the bankruptcy petition date to render it subject to a constructive trust, thereby preventing it from becoming property of the estate under section 541(d) of the Bankruptcy Code.[8] The holding in *Davis* was expressly limited:

> In reaching this result, we proceed narrowly on the remedial theory of constructive trust. We need not decide,

and indeed think it inappropriate for a federal court to decide without first seeking more specific guidance from Maine's Supreme Judicial Court, whether Maine law, broadly applied, gives to non-owner spouses in ordinary circumstances after commencement of a divorce case, but before entry of judgment, an inchoate equitable interest in marital assets owned by the owner spouse. *Such a holding would have profound implications for Maine's law of creditors' rights in a variety of factual situations different from the present.* As the issue is one of first impression in Maine, Maine's highest court rather than a federal court should be the first to plough such new territory.

*Davis*, 356 F.3d at 84 (emphasis added). However, after stating its reluctance to "plough such new territory" with a broad brush, the court went on to state that "the special equities favoring [the non-debtor spouse] on the facts of this particular case are, however, compelling." *Id.*

The *Davis* court also specifically declined to rule on the issue of whether a trustee's powers as a hypothetical lien creditor under section 544 of the Bankruptcy Code could cut off a non-debtor spouse's equitable interest in property because the trustee did not raise the issue and supported the award of the IRA to the non-debtor spouse. *Id.* at 92. Therefore, the holding in *Davis* was expressly limited to the specific facts and equities of that case, as applied to the IRA, which proper-

---

7. A total of $75,750.00 out of $90,000.00 was awarded to the non-debtor spouse.

8. The debtor in *Davis* elected to claim the IRA as exempt under state law. *Davis*, 356 F.3d at 81 n. 4. However, the circuit court's opinion in *Davis* fails to address a conundrum created by its holding. If the IRA was never property of the bankruptcy estate, the debtor would not have had any claim of exemption

under section 522(b) of the Bankruptcy Code and the jurisdiction of the federal courts over the disposition of that property would be questionable. Further, in the absence of the imposition of a constructive trust under applicable state law, any attempt to enforce the divorce decree against the IRA could be subject to a claim that it is exempt under state law.

ty was not otherwise available to the debtor's creditors or his trustee because of its exempt status. If the case were to have broad application to creditors' rights, the *Davis* court either would have broadly applied state law or sought an advisory opinion from the highest court of the state.[9]

The second issue in *Davis* was the disposition of funds in an escrow account. The divorce court ordered that funds valued at approximately $36,000.00 in an escrow account be used to pay certain tax obligations of the spouses, both joint and individual, and that funds in a second escrow valued at $8,400.00 be paid to the non-debtor spouse on account of child support and a debt obligation the debtor was ordered to pay. *Id.* at 92 n. 14. The bankruptcy court held that the funds in escrow were not property of the bankruptcy estate and could be disbursed in accordance with the divorce court judgment. *Id.* at 93–94. The bankruptcy court found that the prepetition state court order for the escrow of certain funds placed them in *custodia legis* and operated as an attachment of those funds under applicable state law. *Id.* The *Davis* court affirmed the bankruptcy court holding that the funds in escrow were in *custodia legis* and did not become property of the bankruptcy estate. When the bankruptcy case was filed, the debtor held "just a contingent interest" in the escrow funds "subject to the divorce court's disposition of the property." *Id.*

## B. New Hampshire Marital Law

■ New Hampshire is a common law state in that a spouse's interest in property held separately by the other spouse does not arise until a divorce petition is filed or the other spouse dies. Once a divorce petition is filed the concept of marital property arises under state law. Marital property includes all tangible and intangible property, real or personal, belonging to either or both of the parties to the divorce, whether the property is held in the name of either or both of the parties. NH RSA 458:16–a(I). Marital property not only includes property held as of the date of the divorce petition, but includes property acquired up to the date of the final divorce decree. *Holliday v. Holliday*, 139 N.H. 213, 215, 651 A.2d 12 (1994). Upon the filing of a divorce petition, the court issues an order restraining each party from "selling, transferring, encumbering, hypothecating, concealing, or in any manner whatsoever disposing of any property, real or personal, belonging to either or both parties," with certain exceptions including ordinary and necessary expenses of living, ordinary business transactions, an agreement of the parties or further order of the court. NH RSA 458:16–b(I). In the final divorce decree, the court may look beyond the legal title to any marital property and order an equitable division between the spouses. NH RSA 458:16–a(II). Although the law presumes that an equal distribution is an equitable distribution, the court may order an unequal distribution after consideration of one or more of fifteen statutory factors. NH RSA 458:16–a(II). *See Murano v. Murano*, 122 N.H. 223, 227–28, 442 A.2d 597 (1982) (decided under prior law) (stating that "[t]he trial court

---

**9.** Notwithstanding the express limitations on the holding in *Davis*, a separate panel of the First Circuit less than a week later cited *Davis* for the broad proposition that under Maine law "once a divorce petition is filed, each spouse is deemed to have a beneficial interest in marital property to which the other spouse holds legal title." *Am. Guarantee & Liab. Ins. Co. v. Keiter*, 360 F.3d 13, 19 (1st Cir.2004). However, the decision in *Keiter* has been distinguished as pertaining to the duty of an insurer to defend a claim under a liability insurance policy, not to creditor's rights in general or interests in bankruptcy in particular. *In re Remington*, 311 B.R. 315, 318 n. 5 (Bankr.D.Me.2004).

may order redistribution of any property falling within the joint marital estate, or within the individual estates of either spouse"), *quoted in Holliday*, 139 N.H. at 215, 651 A.2d 12. After a petition for divorce is filed, a non-owner spouse does not have legal title to marital property owned solely by the other spouse, but because a final divorce decree could award an interest in such property to a non-owner spouse, such a spouse has an equitable interest in the property sufficient to convey standing to protect the legal title to the property pending entry of a final divorce decree. *Bursey v. Town of Hudson*, 143 N.H. 42, 45, 719 A.2d 577 (1998).

 The equitable interest of a non-owner spouse in marital property does not supercede the rights of creditors of the owner spouse during the pendency of the couple's divorce proceeding. In New Hampshire, a creditor can attach marital property prior to the issuance of a final divorce decree and the spouse who is awarded such property takes that property subject to the attachment. In *Charter Fin., Inc. v. Aurora Graphics, Inc. (In re Jasper–O'Neil)*, 149 N.H. 87, 88, 816 A.2d 989 (2003), the New Hampshire Supreme Court held that a divorce decree awarding the wife the previously jointly held marital home did not cut off the rights of a pre-divorce decree attachment creditor. In that case, the creditor obtained an attachment on the parties' marital home and sought to intervene in the divorce proceeding to protect its rights as a lien creditor, but its motion was denied. On appeal, the New Hampshire Supreme Court held that the creditor's interest was not affected by the divorce decree and, therefore, the court need not decide whether the creditor should have been allowed to intervene in the divorce action. The court cited NH RSA 511:17 (1997), which provides that "[n]o attachment of any interest in real estate shall be defeated by any change in the nature of the debtor's rights thereto, ... but the whole interest of the debtor, upon such change, shall be held by the attachment." *Id.*

The New Hampshire Supreme Court's holding in *Jasper–O'Neil* was consistent with its prior holding in *LeBlanc v. Berube*, 141 N.H. 597, 598, 688 A.2d 564 (1997), wherein the court held that the trial court erred as a matter of law in ruling that a divorce action between a father and his new wife terminated the mother's original attachment on real estate that secured unpaid child support. The court reiterated its observation made over a century ago in *Beland v. Goss*, 68 N.H. 257, 258, 44 A. 387 (1894), that "an interest in a debtor's property acquired through attachment survives the debtor's subsequent abandonment or conveyance of the property." *Id.; see also Rodman v. Young*, 141 N.H. 236, 238, 679 A.2d 1150 (1996) (explaining that once a real estate attachment has been made the attachment cannot be defeated by any change in the debtor's rights in that real estate) (citations omitted).

## C. Bankruptcy Law on Trustee's Status as Lien Creditor

 On the date of the filing of a bankruptcy petition, a trustee has the status of a creditor with a judicial lien on all property of the bankruptcy estate on which a creditor could have obtained a judicial lien, whether or not such a creditor actually exists. 11 U.S.C. § 544(a)(1). As a hypothetical lien creditor, a trustee has the power to avoid unperfected security interests in personal property as well as to avoid unperfected liens and security interests in real property or personal property to the extent that a judgment lien creditor may do so under applicable nonbankruptcy law. Lawrence P. King, 5 *Collier on*

*Bankruptcy* ¶ 544.05 (15th ed. rev.2005). "[T]he section 544 'strong-arm' provision of the Code allows the trustee to 'step into the shoes' of a creditor in order to nullify transfers voidable under state fraudulent conveyance acts for the benefit of all creditors." *NLRB v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887 (6th Cir.), *modified on reh'g on other grounds*, 882 F.2d 216 (6th Cir.1989), *cited in Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 697 n. 3 (6th Cir.1999). "[T]he fact that a transfer occurs in the context of [a] divorce proceeding does not immunize such transfer from ... [an] attack by a trustee in bankruptcy for one of the marital partners." *Harman v. Sorlucco (In re Sorlucco)*, 68 B.R. 748, 753 (Bankr.D.N.H.1986) (citations omitted).

### D. *Rooker–Feldman* Doctrine

 Under the *Rooker–Feldman* doctrine, federal courts lack jurisdiction over federal actions that essentially invite federal courts to review and reverse unfavorable state court judgments. *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 20 (1st Cir.2005) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, —— U.S. ——, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)). The United States Supreme Court recently ruled that the *Rooker–Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 125 S.Ct. at 1521–22, *quoted in Diva's Inc. v. City of Bangor*, 411 F.3d 30, 43 (1st Cir.2005).

### IV. DISCUSSION

 Skorich argues that this Court cannot "revisit" the Family Court's finding that essentially all of the remaining marital property be awarded to her because the Court would be violating the *Rooker–Feldman* doctrine. Skorich's reliance on *Rooker–Feldman* is misplaced as the issues being raised by the Trustee in the Debtor's bankruptcy case arose prior to the issuance of the Final Decree. *Federacion de Maestros de Puerto Rico*, 410 F.3d at 24 (explaining that the *Rooker–Feldman* doctrine does not deprive a federal court of jurisdiction if there is parallel litigation) (citing *Exxon Mobil*, 125 S.Ct. at 1526–28). This Court is not seeking to, nor does it have any interest in, relitigating the property division between Skorich and the Debtor. Limited relief from the automatic stay was granted for the purpose of allowing the Family Court to determine an equitable division of the marital property. This Court's role is to analyze the impact of that state court ruling on the Debtor's bankruptcy estate in the context of the motion by Skorich seeking approval and enforcement of the Final Decree.[10]

10. Skorich requests that the Court "approve and enforce" the Final Decree, including the Family Court's findings, allocations, distributions, awards and terms. Pursuant to this Court's order dated September 8, 2004, which granted relief from the automatic stay to Skorich in order to obtain a final divorce decree, the Court indicated that Skorich should file a motion seeking relief to implement any property settlement ordered by the Family Court in a final divorce decree. The Court wants to make clear that it has no intention of "approving" any findings, allocations, distributions, awards and terms contained in the Final Decree. Rather, the Court merely will rule whether property awarded to Skorich in the Final Decree is subject to the competing interests of the Trustee and the

As outlined above, the parties disagree as to whether the following six items or categories of property are property of the bankruptcy estate and thus subject to administration by the Trustee despite their award to Skorich in the Final Decree: (1) the Escrow Funds; (2) furniture located at the marital home; (3) non-corporate funds paid to or received by the Debtor after October 1, 2004; (4) the stock of Skorich Enterprises, Inc. and Cool Foodservice; (5) cash on hand; and (6) jewelry.

## A. Escrow Funds

■ On the day the divorce petition was filed in May of 2003, Skorich and the Debtor jointly owned a second home in Rangeley, Maine. Approximately one year after Skorich filed for divorce, but before the Debtor filed for bankruptcy, they sold the Rangeley Property. The sale proceeds were placed into a joint escrow account maintained by the lawyers for Skorich and the Debtor. Skorich contends the Escrow Funds were being held by the lawyers pursuant to an order of the Family Court. The Trustee disputes this contention and suggests the Escrow Funds were placed in escrow as the result of an agreement between Skorich and the Debtor at the time the Rangely Property was sold. The Trustee contends the record before this Court does not reflect any order of the Family Court directing the establishment of an escrow account.

Apparently there was no written order from the Family Court on or about the time of the sale directing the parties' lawyers to hold the sale proceeds in escrow as officers of the court. To support her contention that the sale proceeds were being held by order of the Family Court, Skorich presented to this Court a Motion to Change Escrow Designation filed in the divorce proceeding on or about November 17, 2004, by the Debtor's former divorce attorney. The parties also submitted to this Court a copy of the order dated November 29, 2004, granting the motion in part, which permitted the Debtor's former divorce attorney to be removed as escrow agent and further provided that Skorich's attorney "shall serve as the sole signatory of the escrowed funds." Skorich also refers the Court to the Final Decree which states:

> In May of 2004 during a chambers conference when the Court became aware of the pending sale of the Rangeley Property, *the Court instructed* counsel for the parties to hold the sale proceeds in an escrow account in the names of *both* attorneys. They agreed to comply with that instruction, and as officers of the Court they did so. Attorney Tober subsequently filed a Motion to Resign as escrow agent, and *this Court ordered* Attorney Blanchette to serve as sole escrow agent. The sale proceeds from the sale of the Rangeley, Maine property which continue to be held by the remaining escrow agent *at this Court's direction,* are awarded to Donna Skorich.

Final Decree at ¶ 17.A (emphasis added except for the word both).

The Court finds the Final Decree dispositive on the issue of whether the Escrow Funds were being held in escrow pursuant to the parties' agreement or a court order. The Final Decree expressly states that the proceeds from the sale of the Rangeley Property were placed in escrow upon the Court's instruction, i.e. order. As a result, the Court concludes that the rationale of *Davis* governs the status of the Escrow Funds.

Debtor's bankruptcy estate. Skorich will be granted relief from the automatic stay to take any action necessary to enforce the Final Decree with respect to property that is not property of the bankruptcy estate subject to administration by the Trustee.

According to *Davis*, the Court must look to New Hampshire law to determine what interest, if any, the Debtor had in the Escrow Funds and what interest passed to the bankruptcy estate. *Davis v. Cox*, 356 F.3d 76, 93 (1st Cir.2004). In *Davis*, the court concluded that the escrowed funds in that case were placed in *custodia legis* under Maine law. *Id.* Accordingly, the debtor was divested of legal title to the funds and title passed to the attorneys as officers of the court. *Id.* Upon the filing of his bankruptcy petition, the debtor possessed only a contingent interest in the funds subject to the divorce court's disposition of the property. Because the divorce court ordered the funds to be distributed to the debtor's former spouse, the bankruptcy estate had no interest in the funds and they could be disbursed as ordered in the divorce decree. *Id.* at 94.

■ New Hampshire law appears similar to Maine law. When a court appoints a receiver, title to property vests in the receiver and is held in *custodia legis* until the receiver disposes of such property pursuant to court order. *See Petition of Leon Keyser, Inc.*, 98 N.H. 198, 200, 96 A.2d 551 (1953) (stating that upon the appointment of a receiver, property is in *custodia legis* with the rights and interests of the parties, including the right and title of the receiver, fixed as of that date); *Nat'l Bank of Bellows Falls v. Vermont Packing Co.*, 90 N.H. 232, 235, 6 A.2d 176 (1939) (stating that "[a] receiver takes possession of property ... subject to all the liens and equities which existed at the time it was taken over by the receiver [and h]e does not take over any more title than the person, firm or corporation had") (citations omitted). In the Court's view, the appointment of a receiver and the placement of funds in escrow pursuant to court order are analogous. Because the Court finds that the Escrow Funds were placed in *custodia*

*legis* prepetition as in *Davis*, the Debtor was divested of legal title when the funds were placed in escrow. Legal title first passed to the two attorneys who were directed by the Family Court to so hold the funds and then passed solely to Skorich's attorney upon the removal of the Debtor's divorce attorney pursuant to the Family Court's November 29, 2004, order. The Escrow Funds did not pass into the Debtor's bankruptcy estate upon the filing of his bankruptcy petition. *See Strafford Savs. Bank v. Bruce*, 122 N.H. 557, 559–60, 448 A.2d 373 (1982) (holding that debtors had no equitable interest in a real estate commission, which they had become obligated to pay upon the sale of their home and which had been placed in escrow and then deposited in court, and such commission should have been excluded from their bankruptcy estate). Accordingly, Skorich is entitled to the Escrow Funds as provided in the Final Decree. The Trustee has no interest in such funds.

### B. Furniture

The parties dispute whether furniture located in the marital residence is property of the bankruptcy estate. In Schedule B.4, the Debtor listed "half interest in furniture Rangely, ME and Rye, NH" as having a value of "5,000.00 approx" and, in Schedule C, the Debtor claimed an exemption in such interest in the amount $3,500.00 pursuant to NH RSA 511:2(III). The parties' property stipulation does not state whether the Rangeley furniture was relocated to the marital home or some other location, or whether it was sold along with the real estate with the proceeds becoming part of the Escrow Funds. The Family Court awarded Skorich all personal property and household furnishings in her possession as of the date of the Final Decree.

On the date of the bankruptcy petition, all furniture in which the Debtor held a legal or equitable interest became property of his bankruptcy estate pursuant to section 541(a) of the Bankruptcy Code. The Debtor exercised his right to claim an exemption in such property pursuant to section 522(b)(1) of the Bankruptcy Code and NH RSA 511:2(III). No objection was filed to that claim of exemption. Accordingly, such exempt property is not subject to administration by the Trustee. *See* 11 U.S.C. § 522(c) (stating that "property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case"). Therefore, in accordance with the Final Decree, Skorich is entitled to the Debtor's exempt furniture in the amount of $3,500.00.

Despite its award to Skorich in the Final Decree, the remaining furniture is subject to the competing interests of the Trustee as it is non-exempt property of the bankruptcy estate. Upon the Debtor's bankruptcy filing, the Trustee stepped into the shoes of a hypothetical lien creditor pursuant to section 544(a) of the Bankruptcy Code. Because Skorich's interest in the Debtor's furniture pursuant to the Final Decree arose subsequent to the Trustee's interest, in accordance with the Court's discussion above regarding New Hampshire state law, she must take the furniture subject to the Trustee's hypothetical lien. *See Charter Fin., Inc. v. Aurora Graphics, Inc. (In re Jasper-O'Neil)*, 149 N.H. 87, 88, 816 A.2d 989 (2003) (holding that a divorce decree awarding the wife the previously jointly held marital home did not cut off the rights of a pre-divorce decree attachment creditor). Accordingly, the Debtor's non-exempt furniture is property of the estate subject to administration despite Skorich's claim to such property. As a hypothetical lien creditor, the Trus-

tee's rights trump those of Skorich under the Final Decree.

### C. Non-corporate Funds

The parties dispute whether non-corporate funds paid to or received by the Debtor after October 1, 2004, are property of the bankruptcy estate. The parties have not identified these non-corporate funds; thus, it is not possible for the Court to determine whether any such funds are properly part of the bankruptcy estate, free from any claims of Skorich under the Final Decree. To the extent that these funds were generated by the Debtor after July 9, 2004, the date he filed his bankruptcy petition, such funds are fresh start money and thus not part of the Debtor's bankruptcy estate under section 541(a). Such funds would be part of the marital estate subject to division and award by the Family Court. *See Holliday v. Holliday*, 139 N.H. 213, 215, 651 A.2d 12 (1994). However, to the extent these funds are proceeds from property of the bankruptcy estate or proceeds from the sale of property of the bankruptcy estate, such funds would be part of the Debtor's bankruptcy estate pursuant to section 541(a)(6) of the Bankruptcy Code. For the reasons outlined above, the Trustee as a hypothetical lien creditor would have rights superior to the rights of Skorich under the Final Decree. Accordingly, those funds would be property of the bankruptcy estate subject to administration despite Skorich's claim to such property under the Final Decree.

### D. Stock

In Schedule B.12, the Debtor listed the stock of "Cool Food Service of NH, Inc." with a value of $200.00 and 500 shares of "Skorich Enterprises" with a value of zero. In Schedule C, the Debtor claimed an exemption of $8,000.00 in the Skorich Enterprises stock pursuant to NH RSA 511:2(XVIII). No one challenged

this exemption. Accordingly, the Skorich Enterprises stock is exempt to the extent of $8,000.00 and, therefore, not subject to bankruptcy administration by the Trustee in accordance with section 522(c) of the Bankruptcy Code. Thus, Skorich is entitled to the Skorich Enterprise stock pursuant to the Final Decree.[11]

With respect to the stock of Cool Food Service, the Debtor did not claim an exemption in that stock, and for that reason the stock became part of the bankruptcy estate on July 9, 2004. The Trustee as a hypothetical lien creditor has rights that are superior to those obtained by Skorich when the Final Decree issued on March 29, 2005. Accordingly, the Trustee may administer the Cool Food Service stock as an asset of the bankruptcy estate.

### E. Cash

■■■ The property stipulation does not identify or list the amount of the disputed cash on hand. The Court shall deem the disputed "cash on hand" to be the $250.00 of cash on hand listed by the Debtor in Schedule B.1. The Debtor did not exempt the cash. Therefore upon the bankruptcy filing the Trustee had the rights of a hypothetical lien creditor, whose rights would supercede those of Skorich under state law as indicated above. For that reason, the Trustee may administer the $250.00 of cash on hand as an asset of the bankruptcy estate.

### F. Jewelry

■■■ Under the terms of the property stipulation, Skorich and the Trustee agreed that "jewelry purchased by Mr. Skorich (2003)," "Watch purchased" and

"Gregs (sic) other watches and personal property" were property of the bankruptcy estate and that "jewelry" was property in dispute. For the purposes of this opinion, the Court has deemed the disputed jewelry category to include the "half interest, jewelry" scheduled by the Debtor with an unknown value in Schedule B.7, less the items or categories expressly agreed by the parties to be property of the bankruptcy estate. The Debtor claimed a $500.00 exemption in his "half interest, jewelry." Thus, to that extent, such jewelry is exempt from bankruptcy administration and is subject to Skorich's claim under the Final Decree. The remainder of any jewelry would be subject to administration by the Trustee as his rights upon the bankruptcy filing would supercede those of Skorich upon the issuance of the Final Decree.

### IV. CONCLUSION

For the reasons set forth above, the following items or categories of property are property of the bankruptcy estate and thus subject to administration by the Trustee despite their award to Skorich in the Final Decree: (1) furniture located in the marital home to the extent of $1,500.00; (2) any non-corporate funds paid to or received by the Debtor after October 1, 2004, that represent proceeds from property of the bankruptcy estate or proceeds from the sale of property of the bankruptcy estate; (3) the stock of Cool Food Service; (4) the $250.00 in cash on hand listed in the Debtor's schedules; and (5) the Debtor's half interest in jewelry, less the items or categories expressly agreed by the parties to be property of the bankruptcy estate, less the Debtor's $500.00 exemp-

---

**11.** The Court notes that Skorich Enterprises, Inc. itself filed a chapter 7 bankruptcy petition, Bk. No. 04–14582–JMD, on December 30, 2004. Such case remains open and is being administered by Steven M. Notinger, chapter 7 trustee. He objected to Skorich's

motion in this case arguing that he should not be bound by any findings of fact or rulings of law by the Family Court or this Court unless and until those issues are addressed directly in the corporation's case.

tion in such jewelry. The remaining items, including (1) the Escrow Funds; (2) the Debtor's exempt furniture in the amount of $3,500.00; (3) any non-corporate funds paid to or received by the Debtor after October 1, 2004, that do not represent proceeds from property of the bankruptcy estate or proceeds from the sale of property of the bankruptcy estate; (4) the stock of Skorich Enterprises; and (5) the Debtor's exempt jewelry in the amount of $500.00, are subject to Skorich's claim under the Final Decree. By separate order, the Court will grant Skorich relief from the automatic stay to take any action necessary to enforce the Final Decree in the Family Court with respect to such property. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.